390        APPELLATE COURTS OF ILLINOIS.

Maney Milling Co. v. Baker-Wignall & Co., 186 Ill. App. 390.

## Maney Milling Company, Appellee, v. Baker-Wignall & Company, Appellant.

## Gen. No. 5,841.

1. CONTRACTS, § 187*—*when one party cannot complain of the other's construction.* The party who chose the ambiguous language of a contract cannot complain of the construction placed on it by the other party where with knowledge of the other party's construction he failed to give notice.

2. CONTRACTS, § 263*—*when action lies for default of severable parts of contract.* In case of a severable contract of sale, an action may be brought on the default of any of the severable parts thereof and the contract may be rescinded as to one part without rescinding the whole contract.

3. SALES, § 59*—*when contract is severable.* A contract for flour to be delivered in instalments and to be paid for when delivered, *held* a severable contract.

4. SALES, § 284*—*when vendor may cancel portion of contract and sue for breach thereof.* A vendor of goods to be delivered in instalments may, on refusal of the vendee to accept certain instalments, cancel the contract as to them and hold the contract in force as to the other instalments; and as to the refused instalments, he may sell the same at the time fixed for delivery and recover of the vendee the difference between the contract and market price.

5. APPEAL AND ERROR, § 438*—*when variance cannot be urged on appeal.* Variance between pleadings and proofs cannot be urged where there was no objection on that ground in the trial court and no error in admission of evidence is assigned or argued.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 1, 1914.

ARTHUR H. SHAY, for appellant.

BOYS, OSBORN & GRIGGS, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number,

On the 5th day of March, 1910, the defendant (appellant), Baker-Wignall & Company, then engaged in the wholesale produce business in Streator, Illinois, ordered from the plaintiff (appellee), Maney Milling Company, then engaged in the milling business in Omaha, Nebraska, 4,000 barrels of Sunkist flour at $5 per barrel, the flour to be packed in 49 pound sacks, under defendant's brand or plaintiff's as defendant might desire, and to be delivered by plaintiff at Streator at the rate of 1,000 barrels per month on the shipping instructions of the defendant, and paid for on delivery.

Plaintiff had delivered 155 barrels of flour when on April 3rd its mill burned, and on April 5th it wrote the defendant asking that the contract be canceled. Receiving no answer to this letter, another of like import was mailed defendant April 14, 1910, and still another on April 16th, and on April 18th defendant wrote plaintiff that it could not place this block of flour with a mill with a reputation and that it had a lot sold for May and June delivery and must insist on the performance of the contract, adding: "Now, if you can place this block of flour with Wells, Abbott, Nieman Co. for their best patent flour at $5.00 all well and good. If not, we ask you to remit us 20¢ per barrel on the 4M barrels, less the 155 barrels which we received." Plaintiff purchased 4,000 barrels of flour of Wells, Abbott, Nieman Co., and on April 20th wrote defendant: "We are in receipt of yours of April 18 and contents noted. We promptly wired you as follows: Your letter 18th received. Have purchased Wells, Abbott, Nieman Puritan grade for your contract, please send shipping instructions promptly. Heretofore we have been afraid to purchase this flour in against your contract for fear same would not be satisfactory, but have arranged with Wells, Abbott, Nieman to fill your contract. So please send us shipping instructions *direct to Omaha,* and trust you will send us instructions on a few cars promptly. The flour we are to furnish is Wells, Abbott, Nieman's Puritan grade at $5.00 per barrel, basis

392    APPELLATE COURTS OF ILLINOIS.

Maney Milling Co. v. Baker-Wignall & Co., 186 Ill. App. 390.

49 lb. sacks, delivered Streator, and we trust the flour will please you as Puritan has heretofore." Not hearing from defendant, the plaintiff again wrote on May 3rd: "We have not heard from you since we purchased the flour in against your contract. Please advise us when you expect to give us shipping instructions." On May 7th defendant wrote plaintiff that it had orders for delivery a few weeks later and as soon as these orders were ready to ship it would send the orders direct to Wells, Abbott, Nieman Co., and would send plaintiff a copy of the order, instructing Wells, Abbott, Nieman Co. to draw on defendant at the rate of $5 per barrel, and if the price was above that to draw on plaintiff for the balance. On May 10th plaintiff wrote the defendant that Wells, Abbott, Nieman had nothing to do with the deal between defendant and plaintiff, and to send all orders direct to plaintiff Receiving no answer to this letter it again wrote on May 17th: "As we have not had a reply to our letter of May 7th, we are today cancelling two thousand barrels of your order given us on March 5th. The market is getting in a very weak position and we can purchase flour today at $5.00 basis Streator and are afraid to carry this order on our books any longer, as we are almost sure the market will go much lower and you will be unable to take it out in the specified time." Defendant did not reply until May 30th, when it wrote plaintiff: "You have not seen fit, or agreed, to fill your contract for flour as we have suggested to you and rather than to have any further misunderstanding, you may cancel the entire block of flour, as we cannot see our way clear to send you the orders and let you fill them with what flour you see fit." To this letter plaintiff replied on June 2nd, reciting the facts from its standpoint, and said: "We immediately turned and purchased the full amount of your contract from Wells, Abbott, Nieman Co. of the grade of flour requested and wrote you accordingly and asked you for instructions. This you did not comply with. We have

been kind enough to cancel 2,000 barrels of this contract and unless we receive shipping instructions on 1,000 barrels by return mail, we will sell same for your account and on the 1st day of July will sell the other thousand barrels." And on June 11th again wrote defendant that it had sold 1,000 barrels of the flour for its account at $4.45 per barrel and charged defendant's account 24 cents per barrel, the difference in price. And again on July 5th wrote defendant stating that it had sold another 1,000 barrels at $4.55 per barrel.

Afterwards this suit was brought to recover such difference in price, and an account presented on the theory that the original contract was for 4,000 barrels of flour, of which 155 barrels were delivered and paid for and 2,000 cancelled, leaving 1,845 barrels at $5 per barrel, of which 845 barrels were sold June 11th at $4.45, and 1,000 barrels sold July 5th at $4.55, which after allowing defendant credit on account of sacks and freight left a balance due plaintiff of $353.50.

There was no evidence offered other than the correspondence before stated of much importance, except that it did appear that the price of flour was fluctuating during the period in question, with the result that had the contract been cancelled when the plaintiff so desired there would have been a loss to the defendant of about 20 cents a barrel; that at the time the 2,000 barrels were cancelled there was no loss to plaintiff in so cancelling it, and at the latter period when the flour was sold, the loss was as before indicated. At the close of the testimony, the court was asked by each of the parties to direct a verdict in its favor and refused the motion of the defendant and directed a verdict for the plaintiff for $353.50, the full amount claimed, which was followed by judgment from which this appeal is prosecuted.

It is argued that the correspondence does not amount to a contract, or a modification of the original contract, to the effect that plaintiff might substitute Puritan flour for Sunkist flour, but that the offer meant and should be construed as meaning that plaintiff might

secure Wells Abbott, Nieman Co., the manufacturers of Puritan flour, to furnish that flour direct to the defendant. The letter of defendant of April 18th seems to us capable of the two different constructions put on it by the parties. It was known to defendant that the plaintiff construed it as an offer that Puritan flour might be substituted. In its answer of April 20th to this offer of the 18th, the words "direct to Omaha" were underscored to call attention to the fact that the order should not be sent to Wells, Abbott, Nieman Co., who were located, not at Omaha but at Schuyler, Nebraska. No objection seems to have been then made by defendant to this construction of the contract, and plaintiff had no intimation until May 7th that the defendant construed it otherwise, and was not notified until May 30th that the defendant refused to perform the contract as construed by the plaintiff. We are of the opinion that the defendant should not be permitted to complain of this construction of the contract under these circumstances. The language of the offer was chosen by the defendant; if ambiguous it was its fault, and if interpreted by the other party contrary to the intention of the author, notice should have been given.

It is argued that the plaintiff released the defendant from any obligation under the contract, even if the contract be conceded, by cancelling the first two deliveries without the consent of the defendant. This contention rests on the well-recognized principle of law that a contract cannot be rescinded in part and affirmed in part. This rule of law does not apply to several contracts. 35 Cyc. 139. There is some confusion and conflict in the authorities on the question of entire and severable contracts, but the contract in question here must be treated as severable under the authority of *Harber Brothers Co. v. Moffat Cycle Co.*, 151 Ill. 84. In that case the Supreme Court adopted the opinion of the Appellate Court [52 Ill. App. 146] in which it was said: "We have no doubt that this contract, though one, was severable, embracing independent obligations

of the parties as to delivery on the one part and payment on the other, under the several orders for machines given by appellant—the principle difference between which and an entire contract is, that either party to one of the former kind, having fully performed as to any independent agreement, may maintain an action thereon for its breach by the other without averring or proving performance, or its equivalent, on his part as to all; but subject to defendant's right to recoup for his failure as to others, in respect of which he is himself not in default.'' The contract under consideration in that case was one for delivery of goods in instalments as ordered by the defendant, and its construction is controlling here. In case of severable contracts of sale, the law is well settled that an action can be brought on the default of any of the severable parts of the contract and the contract can be rescinded as to one part without rescinding the whole contract. In cases of severable contracts for goods to be delivered in instalments extending over a considerable period of time, a default of either party does not discharge the contract, though it must necessarily give rise to an action for damages. 9 Cyc. 648. As indicated in the above quotation from *Harber Brothers Co. v. Moffat Cycle Co. supra.* If action is brought for default on one part of a severable contract the defendant may recoup damages arising from the default of the plaintiff on another part of the contract if he, the defendant, was not himself in default as to that part. In the case at bar, the plaintiff was at all times ready and willing to perform each part of this severable contract, and the nonperformance of delivery of the first two instalments of flour was occasioned by the default of the defendant in failing and refusing to give shipping instructions.

The question whether the vendor of goods to be delivered in instalments, as in this case, may cancel the contract, on refusal of the vendee to accept the goods, as to such instalments as he may choose, and as

396    APPELLATE COURTS OF ILLINOIS.

Maney Milling Co. v. Baker-Wignall & Co., 186 Ill. App. 390.

to which he may perhaps profit by the cancellation, and hold the contract in force as to other instalments that because of the then condition of the market he could not cancel without a loss to himself, is a novel one. We are referred to no authority and find none directly in point. The law is well settled that plaintiff had the right to await the time of delivery fixed by the contract and recover damages based on the market at that time. *Kadish v. Young,* 108 Ill. 170; *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59. There can be no question that the plaintiff in this case, if the last two instalments of flour had been provided for in an independent contract, could, at its election, on refusal of the defendant to perform the contract keep it alive for the benefit of both parties and proceed, as it did, to sell each instalment at the time fixed for delivery, and recover damages on the basis of the market price at that time. *White Walnut Coal Co. v. Crescent Coal Mining Co.,* 254 Ill. 368. In the absence of authority we are inclined to hold, on principle, that the defendant in the face of its own default cannot be heard to complain that the plaintiff chose to cancel two instalments and hold the defendant as to the two other instalments.

It is claimed that the declaration is insufficient; there were four special counts and the common counts. The fourth special count alleges a contract to deliver 2,000 barrels of flour; an offer by plaintiff to deliver; a refusal by defendant to accept; and resale after due notice, etc. It is argued that there was no contract to sell 2,000 barrels, that if there was any contract it was to sell 3,845 barrels. Even if there was a variance between the pleadings and the proofs, no objection on that ground was made in the trial court and no error is assigned or argued here on the admission of evidence. Appellant cannot now be heard to say that the court erred, either in overruling its motion for a new trial or in arrest of judgment because of a variance between the pleadings and proof. *Fox v. Starr,* 106 Ill. App. 273, and authorities there cited. Other objections to the

declaration might have been considered had they been raised on demurrer, but the defendant having pleaded to the merits, the question now is, was there one count in the declaration good after verdict? We have no doubt the declaration was good, at least after the verdict.

Finding no error in the record the judgment is affirmed.

*Affirmed.*