Geneva Organ Company, Appellee, v. Ambassador Theatres Corporation and Joseph Wassell, Appellants.

Gen. No. 32,386.

Opinion filed June 20, 1928.  Rehearing denied July 5, 1928.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellants; DWIGHT P. GREEN, J. B. MARTINEAU and ALLEN W. COOK, of counsel.

CHARLES P. MOLTHROP and J. ARTHUR JOHNSON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This appeal is prosecuted at the instance of defendants from a judgment against them on the verdict of a jury in the sum of $16,306.80.

Defendants assign thirty-eight alleged errors and argue but five. Under well-settled rules of procedure in this court we shall confine our decision within the five assignments of error argued for reversal, and ignore the remaining thirty-three not argued.

Defendants in their main brief say:

"On this appeal we rely upon the following specific errors committed by the trial court:

"(1)   The improper and erroneous instructions to the jury that the use of the organ by the defendant corporation after its rejection by defendant corporation constituted a waiver, as a matter of law, of the rejection of such organ.

"(2)   The exclusion of proper evidence over defendants' objection.

"(3) The admission of improper evidence over defendants' objection.

"(4) The refusal to give proper instructions offered by defendants.

"(5) The refusal to direct a verdict for defendants."

The cause of action is based upon a promissory note, which is as follows:

"Chicago, Jany. 15, 1925.

$14,400.00

"On or before 6 months after date we promise to pay to the order of Geneva Organ Company Fourteen Thousand Four Hundred Dollars payable at 5823 W. Division St.

"Value received with interest at 6% per annum.

M. & H. Theatres Corp.

W. P. McCarthy, President,

Joseph Wassell, Treas."

The consideration of the note was one pipe organ, furnished for and installed in the Ambassador Theatre in Chicago. When the note became due it was not paid and the payment of the note was at the request of defendants extended to November 15, 1925, on condition that the defendant Joseph Wassell joined in such extension. The extension was indorsed on the back of the note in these words: "Payment extended to November 15, 1925. Geneva Organ Co., Walter Hogans, Treas., Joseph Wassell."

Under defendants' first alleged assignment of error it cites *Seeberg Piano Co. v. Lindner,* 221 Ill. App. 94, in which the opinion was written by the writer of this opinion, and it is contended that that opinion is in its essence controlling of the instant case. A careful perusal of that opinion quite affirmatively demonstrates that in essential particulars, as applied to the case at bar, it is very different. In the *Seeberg Piano Co.* case, *supra,* the defendants rejected the or-

gan, tendered it back to the piano company, who refused to take it, and thereupon the organ was put in storage for plaintiff's account, sending the piano company the warehouse receipt therefor. In that opinion this court said:

"There was an abundance of evidence from which the jury might properly find that the style 'V' organ which defendants bought of plaintiff for their moving picture theatre was wholly unsatisfactory for the purpose for which it was purchased and entirely worthless to defendants in their moving picture business in which it was to be used, and that plaintiff knew the purpose for which the organ was to be used and, so knowing, installed it in defendants' Rosewood Theatre."

Many defects in the organ were pointed out in the testimony, among which were the sticking of the keys, the failure of other keys to respond to the touch of the organist, the failure of notes to stop when the fingers were removed from the keys, and that discords and unharmonious sounds resulted from such defects when the organ was in action. In the *Piano Co.* case plaintiff was given every opportunity to remedy the defects found in the organ and reported to it by defendants, but failed to do so. The piano company urged for reversal "that defendants were obligated when they rescinded the contract to restore the *status quo* and put plaintiff in as good a position as it was in before the sale. We think this primary obligation was fully met by the return of the organ; that such restitution of the organ to plaintiff was all that could possibly be done under the circumstances and was a sufficient compliance with the law which made it obligatory upon defendants to put plaintiff in as good a condition as it was before the sale."

While it is true that defendants made many complaints that the organ was not in good condition in

many respects, and while defendants offered to return the organ, they never did so; it remained in the theatre and was in constant use until the time of the trial. If defendants had desired to effectually bring themselves within the law laid down in the *Piano Co.* case, *supra,* on plaintiff's refusal to take the organ out of the theatre, defendants should, as in the *Piano Co.* case, *supra,* have either physically returned the organ to plaintiff or stored it in some warehouse in its name and sent the warehouse receipt to the plaintiff. This they made no attempt to do. In no way did they attempt to restore the *status quo;* on the contrary defendants retained the organ and used it, and for aught that appears to the contrary, they are still doing so. Furthermore at the request of defendants plaintiff gave a waiver of lien which it had under the law and accepted the note in suit in full payment. Thereafter defendant theatre company inventoried the organ as an asset and secured blue sky permits to sell stock in which the organ was stated to be an asset and inventoried it for that purpose. In September, 1926, the theatre company entered the money owing on the organ as a liability to the plaintiff organ company and so continued to carry it as a liability to the time of the trial. Furthermore in the general blanket trust deed given upon the theatre company's property securing a bond issue in the sum of a quarter of a million dollars, the organ was specifically conveyed as a part of the mortgage security, and after the installation of the organ the theatre company used it continuously for more than a year and a half until the trial of the case in the court below.

It further appears that there was a demonstration of the capacity of the organ, at which defendant Wassell was present with others of the theatre company, and that the test there made, it is in evidence, was satisfactory to those who heard it, but that Wassell

and others of the theatre company after the playing was started did not remain to hear the organ tested, but went away.

Under the reasoning in the case *supra* defendants' actions were a mere pretense to rescind the contract; they never did any act which, under the law, was necessary to restore the *status quo*. The actions of defendants regarding the possession and use of the organ above recited unqualifiedly indicated that the defendant theatre company affirmed the contract, and that thereafter they held themselves out to be the owners of the organ. These material facts are virtually undisputed. The defendants cannot now be heard, while in possession of the organ and operating it in the business of the theatre, to have any right to claim that they rescinded the contract, for every action above recited was in law an affirmance of the contract of purchase and their ownership of the organ.

We therefore hold that while by words the theatre company attempted to rescind the contract, by their actions the contract stands affirmed.

It has been demonstrated by the constant use of the organ that it is suitable for the purpose for which the defendant theatre company bought it, and it is idle in view of these facts so well established to claim *dehors* them that the contract was rescinded. The undisputed actions of the defendant theatre company in inventorying the organ as an asset, in carrying the account due therefor to the credit of the plaintiff, pledging the organ in its quarter million dollar trust deed as property owned by it, and its continued use of the organ for the purpose for which it was bought effectually estops it from making any successful claim to the contrary. It was the fact that the attempt to rescind the contract was abortive, and the rulings of the court on the evidence were without error.

The defenses of want of consideration and failure of consideration are untenable in the light of the

proofs. The consideration moving to the theatre company was the organ sold to it by plaintiff, the title to which was and still is vested in it, and as to the defendant Wassell, the extension for four months of the time of payment of the note, given as the purchase price of the organ, is sufficient consideration moving to him for signing his name upon the back of the note.

Defendants urge for reversal that plaintiff's instruction number fourteen was erroneous. This instruction reads:

"The court instructs the jury that even though the defendant corporation within a reasonable time after the installation of said organ determined to and did, by word of mouth or otherwise, reject or attempt to reject the said organ, it could not under the law retain possession of said organ and use it for its own profit in its business and at the same time insist upon the said rejection, if any rejection or attempted rejection is shown in this case. Under the law the use of an instrument subsequent to the alleged rejection or attempted rejection thereof, makes the said rejection thereof unavailing."

This instruction stated a correct principle applicable to the facts in evidence. The continued possession and operation of the organ by the defendant theatre company was inconsistent with its attempted effort to rescind the contract in the manner heretofore stated in this opinion. By its words it attempted to rescind the contract, but by its affirmative action, continued to the time of the trial, it effectively affirmed the contract.

It is again objected that the court erred in the admission of certain evidence on the part of plaintiff against the objection of defendants. This testimony upon examination relates to evidence tending to prove that the organ was constructed in accordance with the contract and the specifications in the contract. We think such evidence was pertinent to the issues and did not injuriously affect the merits of the defense.

The witness Stevens was asked this question: ''Any talk about the organ?'' He answered: ''Nothing derogatory that I heard of.'' It was objected that the answer was not responsive, and the court held that the answer might stand. The objection was well taken, but the whole case considered we would not be warranted in reversing the case for this slight erroneous ruling.

Defendants argue that the court refused to give proper instructions offered by the defendants. These instructions were mainly grounded upon the erroneous contention that the contract for the sale of the organ had been rescinded by the defendant theatre company, and specifically argued that defendants' instructions numbers 1, 3, 5, 6, 7, 8 and 9 were erroneously refused. We have read these instructions carefully and in view of the evidence regarding the unavailing attempt to rescind the contract, we hold that they were properly refused. As we have before held, the buyer, the defendant theatre company, did not rescind the sale or elect to do so, so as to make the same effective under legal principles governing the rescission of contracts.

The court did not err in denying defendants' motion to instruct the jury to find a verdict for defendants; neither did it err in refusing to instruct a verdict in favor of the defendant Joseph Wassell.

The judgment against the defendants jointly was proper in view of the facts in evidence. Joseph Wassell, a stranger to the note, in placing his name on the back without any designation or limitation of liability, under the law was presumed to be a guarantor. However, before the passage of the Negotiable Instrument Act of 1907 that presumption could have been rebutted, but as held in *Tucker v. Mueller*, 287 Ill. 551, the Negotiable Instrument Act brought many changes.

In *Anshen Co. v. Iglowitz*, 202 Ill. App. 230, where the question arises as to whether such party was guarantor or indorser, this court said:

"By section 81, ch. 98 *supra* (J. & A. ¶ 7702), defendant is an indorser of the note in suit. This section reads: 'A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicated, by appropriate words, his intention to be bound in some other capacity.' "

In *Mexican Asphalt Paving Co. v. Love,* 73 Ill. App. 250, the court said:

"There is no evidence tending to prove that Sayler's liability is other than that of guarantor. By virtue of Section 2 of the Act of 1895, in respect to negotiable instruments, the maker and the guarantor of a promissory note may be sued jointly. 2 S. & G. Stat., Ch. 98, Sec. 8."

And the rule in this State is the same today, that parties severally liable on a negotiable instrument may be joined in the same suit.

It is in evidence that Wassell was a bank president, passing upon negotiable instruments and the liability of parties to such instruments in the discharge of his duties as president of a bank. He undoubtedly knew the effect of his signing his name on the back of the note in suit without any limitation as to his liability other than that which the law infers from that situation.

By the stipulation of counsel found in the record it was agreed that on November 16, 1925, November 15th falling on Sunday, a demand was made on the theatre company for the payment of the note and that payment was refused, and that on the same date the bank addressed and mailed a personal letter to both defendants and the plaintiff stating that the note had been protested, that payment had been refused, and that the note had been dishonored. This fully meets with the requirements of the law in regard to notice of nonpayment and dishonor.

Plaintiff contends that not only should the judgment of the trial court be affirmed, but that it should be awarded statutory damages as the merits of the case are entirely with the plaintiff. While there is much force in plaintiff's urgency in this regard, still we do not feel that we are able to say that defendants prosecuted this appeal simply for delay, although while as a matter of fact they had no defense upon the merits, still they may have believed, though mistakable so, that there was sufficient error in the record to justify their calling upon this court for its review.

There is no error in the record or judgment in this appeal, and therefore the judgment of the superior court is affirmed.

*Affirmed.*

WILSON and TAYLOR, JJ., concur.