RENO SALES CO., Inc. v. PRITCHARD
INDUSTRIES, Inc.

No. 9742.

United States Court of Appeals
Seventh Circuit.

Dec. 9, 1949.

Rehearing Denied Jan. 11, 1950.

280

George A. Gordon, Chicago, Ill., Alfred F. Rueben, Chicago, Ill., for appellant.

Jack I. Levy, I. E. Ferguson, John J. Faissler, Chicago, Ill. (Sonnenschein, Berkson, Lautmann, Levinson & Morse, Louis G. Melchior, Chicago, Ill., of counsel), for appellee.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brought this action to recover $12,050.56, the alleged unpaid balance of the purchase price of a quantity of waste baskets sold to defendant. In its answer defendant admitted receipt of the baskets, but denied liability for the unpaid purchase price, claiming that the baskets did not conform to sample and were of inferior quality and workmanship, and that it had offered to return all of said baskets to plaintiff. Defendant also interposed a counterclaim demanding $25,833.56, the amount which it had paid on its account for said baskets, plus $1,374.86 freight charges, again alleging that the waste baskets shipped by the plaintiff were of poor workmanship and were not merchantable, and that it had offered to return all of said baskets to plaintiff.

The cause was tried to a jury. At the close of defendant's case, the trial court granted plaintiff's motion for a directed verdict. A formal verdict was not signed by either the members of the jury or the foreman thereof. The court dismissed the counterclaim and entered judgment for the plaintiff, from which judgment this appeal is taken.

Although the order dismissing the counterclaim of plaintiff recites, "Ordered that said counterclaim be and it is hereby dismissed and that judgment be entered on the pleadings * * *," it is apparent from another part of said order and from the colloquy between the trial judge and counsel for plaintiff that a judgment on the verdict was contemplated. The order also recites, "* * * and the Court having heard the evidence adduced and the arguments of counsel and considered the pleadings filed herein directs a verdict for the plaintiff-counterdefendant on the counterclaim herein."

On July 18, 1946, at Chicago, Illinois, defendant gave plaintiff a written purchase order for between 21,000 and 22,000 waste baskets, "as sample submitted," for $1.90 each. It was agreed that the baskets were to be shipped in individual sealed cartons to the defendant at Chicago for resale to defendant's customers. From July 22, 1946, to August 15, 1946, plaintiff shipped, delivered, and invoiced to defendant six shipments totaling 8,799 baskets for which defendant paid a total price of $16,718.10. From August 20 to October 24, 1946, an additional six shipments were made, totaling 11,134 baskets for a total price of $21,154.60. Up to November 29, 1946, defendant had paid to plaintiff a total of $9,115.46 on account; in addition eight post-dated checks, each for $1,500, had been given by defendant to plaintiff, but payment thereon was stopped. In December, 1946, defendant offered to return the waste baskets, but made no attempt or effort to do so, and continued to sell them up to the date of the trial in April, 1948. In all, about 3,000 baskets were sold which defendant obviously was in no position subsequently to return.

■ Upon a motion for a directed verdict, the evidence must be viewed in the light most favorable to the party against whom the verdict is directed, and all conflicts must be resolved in his favor. Storck v. Northwestern Nat. Casualty Co., 7 Cir., 115 F.2d 889; Aetna Casualty and Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350. The question here presented is: At the conclusion of its evidence had defendant established a prima facie case in support of its answer and counterclaim?

Defendant's answer, as amended, was based upon Sec. 69(4) of the Uniform Sales Act in force in Illinois.[1] Defendant's counterclaim invoked the remedy under Sec. 69(1) (d) of the Uniform Sales Act.[2]

Both parties seem to agree that, in order to establish a prima facie case, it was incumbent upon defendant to prove four necessary elements: (1) that the contract of sale was by sample; (2) that there was a breach of warranty; (3) that the rescission was made within a reasonable time; and (4) that defendant had a right to rescind the contract in part and affirm it in part. Plaintiff contends that the defendant was unable to rescind in toto, and had waived any right it might have had to rescind.

The first element was not in dispute, and the district court held that the sale was by sample. As to the second element, the trial court found: " * * * The evidence indicates that, so far as the defendant-counterclaimant has made any inspection of the merchandise, it does not conform to sample and is therefore a violation of one of the implied warranties under sec. 16 of the Uniform Sales Act, * * *"

This conclusion is supported by the testimony of the expert witness, Elmendorf, and must be accepted by this court.

■ The parties are in dispute over whether the attempted rescission was timely. What constitutes a reasonable time must be determined after considering all of the attendant circumstances. Defendant was a wholesaler and retailer of office equipment. The baskets shipped to it in large quantity were in individual sealed cartons. Plaintiff knew that such baskets were to be resold and reshipped in said cartons to customers of defendant. In order to detect the latent defects, the cartons had to be opened and the baskets separated at the ends. Defendant offered evidence to show that instead of plywood panel ends being evenly machined and glued in the recesses, as in the sample, metal fasteners had been used, which, being driven across the grain of the center ply, had a tendency to split it thus causing the baskets to be split at the end. Although sometime in October, 1946, defendant had received a complaint about one or more baskets shipped to a customer, it concluded that the damage had occurred in shipment because the carton itself was damaged. It was not until December 3, 1946, that defendant had actual knowledge of the latent defects of the baskets. Immediately defendant checked other baskets in stock and finding some that were unsatisfactory consulted its attorney. The reasonable time in which a purchaser of chattels must rescind the contract runs only from the time the purchaser had knowledge of or is chargeable with knowledge of the breach of warranty. See Anno., 72 A.L.R. 740. We

---

1. Illinois Revised Statutes, 1947, Ch. 121½, § 69 (4): "Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price."

2. Illinois Revised Statutes 1947, Ch. 121½, § 69 (1): "Where there is a breach of warranty by the seller, the buyer may, at his election—* * * (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them, to the seller and recover the price or any part thereof which has been paid."

conclude that the attempted rescission by defendant was timely.

We must now focus our attention on the conflicting contentions pertaining to the fourth element. Under the circumstances of this case, is a partial rescission of the contract permissible? The trial court said: "* * * and by selling several thousand of the wastebaskets, (defendant) has exercised a right of ownership inconsistent with that of the seller and cannot restore the seller to the status quo by a return of the goods. Rescission cannot be partial. * * *"

Defendant contends that at the time of the trial, it had on hand 16,750 baskets; that it had the right to return not only the six separate shipments sued on by plaintiff which totaled 11,134 baskets, but also the shipments of August 2nd, 9th and 15th, 1946, which totaled 5,179 baskets. Stated differently, defendant insists that, having 16,750 baskets in its possession, it had the right to rescind the nine shipments from August 2 to October 24, 1946, inclusive, which totaled 16,313 baskets, and to pay for the three shipments that it is unable to return.

Defendant admits that it is a well settled rule of law that a purchaser is not permitted to affirm a contract in part and rescind as to the residue, but argues that this rule does not apply to severable contracts, citing Maney Milling Co. v. Baker-Wignall & Co., 186 Ill.App. 390. See Anno., 148 A.L.R. 424. Defendant also cites a number of Illinois decisions to the effect that a sale is divisible or separable where it provides for delivery and payments in installments.[3] Defendant relies also on Sec. 76(1), Uniform Sales Act of Illinois, which states that a divisible contract means a contract to sell or a sale in which, by its terms, the price of a portion or portions of goods less than the whole is fixed as ascertainable by computation.

Under the Uniform Sales Act of Illinois, defendant had a choice of alternative defenses. It could have kept the baskets and set up the breach of warranty in diminution or extinction of the sales price; it could have kept the baskets and sued the plaintiff for damages for breach of warranty; or it could have rescinded the contract and offered to return the baskets. Defendant elected the last of these alternatives, and tried the case on the theory of rescission, offering no evidence as to damages.

Rescission implies renunciation of the sale and disclaimer of the ownership of the goods. Here the defendant continued to offer for sale and to sell baskets long after the discovery of the defective baskets— in fact, right up to the time of the trial. Defendant, recognizing that such a course of sales does not square with its present theory of rescission, now makes claim that the contract was severable, and that baskets sold, or offered for sale, by it came from the 3,000 baskets as to which no rescission is attempted.

Defendant's difficulty is that it did not try its case on the theory that the contract was severable. Its amended answer stated, "* * * and defendant further states that the merchandise shipped as set out by plaintiff in paragraph 6 and paragraph 7 is and was part of one and the same transaction." By its amended counterclaim defendant tendered the return of all the baskets which it had received, and demanded recovery of all the money which it had paid to plaintiff. The transaction here was one sale of one type of waste basket, each at the same price, as evidenced by one purchase order. We hold that the contract of sale was an entire contract. The situation in the case at bar is similar to that in Geneva Organ Co. v. Ambassador Theatres Corp., 249 Ill.App. 390, where the defendant claimed an organ was defective and offered to return it, but continued in possession of the organ and to operate it. The court said, 249 Ill.App. at page 396: "By its words it attempted to rescind the contract, but by its affirmative action, con-

---

3. Defendant relies particularly on Ava Blue Grass Creamery Co. v. Sussman Bros., 243 Ill.App. 483; Harber Brothers Co. v. Moffat Cycle Co., 151 Ill. 84, 37 N.E. 676; and Maney Milling Co. case, supra.

tinued to the time of the trial, it effectively affirmed the contract."

After the trial court announced its decision, the defendant moved to amend its pleadings to conform to the proof. Defendant assigns as error the denial of this motion by the trial court. Defendant had amended its answer and counterclaim before trial, and the court apparently regarded the last motion to amend as an atempt to change defendant's theory of his case to a position not supported by the evidence. However, not being a part of the record in this case, we are uninformed as to the contents of the proposed amended pleadings. Under the circumstances we cannot hold it was an abuse of discretion to deny the motion to amend. Roach **v.** Stastny, 7 Cir., 104 F.2d 559.

Finally defendant argues that the judgment is invalid because the jury did not return a verdict. It appears that after plaintiff's motion for a directed verdict was granted, the trial judge dismissed the jury without a verdict being signed. Defendant argues it did not waive a jury trial to which it is entitled under VII Amendment to the United States Constitution. Defendant failed to object when the jury was discharged, and did not raise this ground upon its motion for a new trial. In accordance with precedent and custom, it would have been better practice to have had the foreman of the jury sign the verdict at the direction of the court. However, where the trial court's attention was not invited to the failure, we do not regard the omission as reversible error. The determination was entirely that of the court; the jury had no further function except perhaps in a ministerial capacity. Situations have arisen where a jury has refused to sign a verdict as directed by the court, but that has never been considered to be fatal to the judgment that was thereafter entered.

In Domarek v. Bates Motor Transport Lines, Inc., 7 Cir., 93 F.2d 522, at the time that the Conformity Act was in effect, this court concluded that the Illinois Civil Practice Act and Rule 22 of the Supreme Court of Illinois, Smith-Hurd Stats. c. 110, §§ 192(3), subd. a, 259.22, authorized the entry of a judgment even though the jury had failed to return a verdict. See also discussion on this point in Cahill v. Chicago, M. & St. P. R. Co., 7 Cir., 74 F. 285; and in Moore et al. v. Petty et al., 8 Cir., 135 F. 668.

Finding no error, the judgment of the trial court is affirmed.