**MOSCAHLADES BROS., INC., Plaintiff-Appellant,**

v.

**MALLARS & COMPANY, Defendant-Appellee.**

No. 12408.

United States Court of Appeals Seventh Circuit.

Feb. 19, 1959.

**632**

Harold A. Fein, Chicago, Ill., for appellant.

Louis Dennen, Chicago, Ill., Chris D. Toulon, Chicago, Ill., for defendant appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

This action was brought to recover the sum of $3,336.80 as the purchase price of a shipment of Italian Romanello cheese. The defense was that the cheese delivered was "unfit for human consumption" and was rejected. The trial court found generally in favor of the defendant, but entered judgment against the defendant for $78.41 on the basis that defendant had accepted and resold two cases of the shipment of cheese in controversy.

Defendant is a wholesale dealer in cheese and other products. It had purchased cheese from plaintiff since 1925. Pursuant to an order previously given, plaintiff on August 19, 1953 shipped to defendant at Chicago, twenty-five cases of Romanello cheese. The agreed purchase price was eighty cents a pound. Each case consisted of twelve loaves and each loaf weighed about fourteen pounds. As directed, the cheese was delivered on August 23, 1953 to Fulton Market Cold Storage at Chicago. Defendant picked out two cases of the cheese and had them brought to its place of business for examination. The loaves were covered with what defendant described as a brown slime, but which plaintiff described as merely a condensation of moisture. One loaf was cut open, and the cheese was found to have a reddish tinge. The normal color of this type of cheese is white or gray white. By letter dated August 24, 1953, the entire shipment was rejected by defendant. The words used were "Consequently, we are rejecting the entire shipment which is stored at the Fulton Market Cold Storage for your instructions."

The respective rights of the parties at this point are quite clear. Under the Uniform Sales Act of Illinois,

Chap. 121½, Ill.Rev.Stats. § 1 et seq. there was an implied warranty that the cheese was of a merchantable quality. Also, as required by the Act, there was a prompt and timely notice by defendant of alleged failure of warranty.

However, the parties continued to negotiate mostly by correspondence. Plaintiff insisted the cheese was of good quality and finally suggested a joint inspection at the warehouse in Chicago. On November 19, 1953, plaintiff's vice-president Brook and defendant's president Sam Mallars together examined six loaves of cheese which were taken from three cases, two of which had not previously been examined. Defendant again insisted that the loaves were covered with brown slime. Plaintiff again contended the moist condition was a harmless condensation. Several of the loaves were then tested with a "cheese trier" and in one of them, a portion of the cheese in the plug or core extracted had a reddish tinge. Brook suggested to Mallars that as there was a probability other loaves might show some redness or other defect, that defendant accept the shipment and plaintiff would make a full allowance for any defective loaves discovered. Defendant rejected this proposal.

After the joint inspection and prior to January 26, 1954, Mallars talked by telephone [1] to Brook about the quality of the cheese. Brook suggested that he try to dispose of the cheese. On January 26, defendant removed two cases of cheese from the warehouse, found they were salable, and did sell them, but gave no notice of such withdrawal and sale to plaintiff. No remittance was made for the cheese sold until four months later when defendant remitted a check for $78.41 by letter of May 25, 1954. The amount of this check was stated "to cover the difference of the two cases which we used, less the storage charges up to May 23rd, as well as the proportionate freight charges * * *" In this same letter defendant wrote "as previously stated in our letter of August 24, 1953, *we have again decided* (emphasis supplied) to return the twenty-five cases of Italian Romanello Cheese, covered by your invoice No. 7487."

By letter of May 28, 1954, plaintiff insisted their inspection had disclosed not more than two loaves that might be of doubtful quality, and protested there was no business basis for defendant using two cases of the cheese and electing to return the other twenty-three. Plaintiff also suggested arbitration under the rules of the American Arbitration Association.

On June 2, 1954, defendant wrote that the transaction was closed as far as it was concerned. Brook suggested in a letter dated June 4, 1954, that he would be in Chicago June 10th and would be glad to discuss the matter. The record is not clear what, if anything, was said or done on that date. On June 18, 1954, Mallars wrote he would make another inspection of the cheese and on June 23, 1954, he wrote he had made such inspection of the other eighteen cases and that they were in the same condition as those previously inspected by Brook and Mallars, and that the result is the same "a final rejection." Also was enclosed a check for $78.41 [2] "to close this account."

Plaintiff replied by letter of June 25, 1954, stating it was willing to guarantee any unsatisfactory loaves "which you can put aside for our account." Plaintiff returned the check for $78.41. Defendant wrote under date of June 28, 1954 and stated "The fact remains, as per our letter of June 23rd, this merchandise will remain at the Fulton Market Cold Storage Company, for your account." Plaintiff's letter dated June 30, 1954 stated "* * * and it was my understanding and remains my understanding that you

---

1. Brook testified he did not talk with Mallars by telephone between August 24, 1953 and June 30, 1954. He also testified he saw Mallars in Chicago in February, 1954 and on June 30, 1954.

2. The record is not clear whether this is the same check enclosed in defendant's letter of May 25, 1954.

agreed to take the cheese and to use it with the guarantee that I gave you that we would make good any bad loaves."

The decision in this case really depends upon the legal effect of defendant removing two of the twenty-five cases of cheese (335 pounds) from the warehouse and selling same to its customers after the initial rejection of the shipment. These cases were taken by defendant about January 26, 1954. Defendant made no remittance therefor, and did not inform plaintiff that it had sold this cheese until nearly four months later when defendant wrote a letter to plaintiff dated May 25, 1954. In describing the two cases taken, defendant "found them to be in fairly good condition and acceptable." Theretofore, plaintiff had importuned defendant to accept the cheese and promised to make good for any defective loaves, but defendant had steadfastly refused such offer. It should be noted that in sending the check in May, defendant deducted storage charges on the entire shipment and also "the proportionate freight charges."

Two sections of the Illinois Uniform Sales Act are pertinent:

"§ 48. What constitutes acceptance. The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

"§ 69. Remedies for breach of warranty. * * * (3) Where the goods have been delivered to the buyer, he cannot rescind the sale * * * if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were at the time the property was transferred to the buyer * * *."

Plaintiff urges that when defendant withdrew two cases and sold same, and for four months thereafter made no report thereof to the plaintiff, it was clearly acting inconsistently with ownership of the cheese by the plaintiff. Plaintiff cites several Illinois cases and federal cases which apply Illinois law where somewhat comparable situations were considered.

In Foley & Company v. Excelsior Stove & Mfg. Co., 265 Ill.App. 78, plaintiff had shipped 25,502 catalogs which had been printed according to specifications. Eight days after payment was due, defendant complained of defects in printing. Plaintiff sought permission to reprint the defective catalogs or to make an allowance of the same. Defendant would agree to nothing less than a reprint of the entire order. Plaintiff and defendant continued negotiations, and after they reached an *impasse,* defendant distributed some of the catalogs. Up to this point the facts are very similar to those in the case at bar. However, in the Foley case, there is one additional factor: a fire occurred on defendant's premises and in the proof of loss one of the items included by defendant was the value of the catalogs. The court held that in spite of the prompt notification to plaintiff of alleged defects, the appropriation of part of the shipment was, by law, an acceptance of the entire shipment as the contract of sale was indivisible. The language of the court indicates the result would have been the same if there had been no fire or claim made against the insurance company, because defendant, by selling some of the alleged defective catalogs, was doing an act inconsistent with ownership in the plaintiff.

In Reno Sales Co. v. Pritchard Industries, 7 Cir., 178 F.2d 279, 280, this court considered an Illinois contract whereby defendant purchased 21,000 to 22,000 waste baskets "as sample submitted." We held the rescission was timely. However, after defendant offered to return the balance of the baskets unsold, it did continue to sell some of them. We point-

ed out that under Illinois law, rescission implies a renunciation of the sale and disclaimer of the ownership of the goods, and pointed out that the continued sale of the baskets was inconsistent with the theory of rescission. Defendant urged the contract was severable. We did not agree, and held the contract was one sale of one type waste basket, and that the contract was an entire contract. In other words, indivisible.

In such cases as Standard Auto. Supply Co. v. Marshall Field & Co., 161 Ill.App. 372, and Stark Music Printing & Publishing Co. v. M. Witmark & Sons, 189 Ill. App. 293, it was held that before a party to a voidable sale will be permitted to rescind the contract, the goods must be returned or tendered to the other party in toto; that the inability to restore the goods will not relieve him from the necessity of so doing, and that it is not sufficient to offer to pay the amount for that part of the goods which has been appropriated. To the same effect see Santa Rosa-Vallejo Tanning Co. v. Charles Kronauer & Co., 228 Ill.App. 236 where sixty-seven rolls of harness leather were shipped and the defendant accepted nine but attempted to reject the other fifty-eight.

We hold the contract in suit was one indivisible contract for the purchase and sale of twenty-five cases of cheese. In our view, the conduct of the defendant in withdrawing two cases from the twenty-five case shipment and selling such cases without notice to plaintiff for four months was inconsistent with ownership in the plaintiff. We also have been influenced by the further conduct of the defendant such as failure to remit for the two cases of cheese for nearly four months, and the deduction from the remittance eventually made of the storage charges for the entire shipment.

Judgment is reversed with directions to enter judgment for the plaintiff.

Reversed.