9780

KNIGHT v. LAÜRENS MOTOR CAR CO. *ET AL.*   (Two Cases.)

(93 S. E. 869.)

1. MASTER AND SERVANT — SCOPE OF EMPLOYMENT. — Where defendant motor company's mechanic, who sometimes operated cars for transportation of passengers, took defendant's car at night for a "joy ride," the motor company was not liable for the mechanic's torts while on such trip.

2. MASTER AND SERVANT—TORTS OF SERVANT—RATIFICATION.—Where the servant was not acting at all for the master, and did not profess to be, retaining the servant after knowledge of his tort would not constitute ratification, binding the master.

3. COSTS—ARGUMENT—AMOUNT.—Under rule 9, subd. 3 (104 S. C. 528, 90 S. E. 8), the respondent on reversal is liable only for cost of printing 10 pages of appellant's argument and will not be taxed with costs of an argument of 62 pages.

Before WILSON, J., Laurens, Spring term, 1916. Reversed.

Actions by Mary C. Knight and by W. B. Knight against the Laurens Motor Car Company and another. Judgment for plaintiffs, and defendants appeal.

*Messrs. Grier, Park & Nicholson* and *Simpson, Cooper & Babb,* for appellants. *Messrs. Grier, Park & Nicholson* submit: *The liability of an owner of an automobile for injury to a third person by the party in charge of, or driving the automobile grows out of the relationship of master and servant and cannot otherwise arise. It is predicated on the familiar maxim, respondeat superior:* 97 S. C. 177; 47 L. R. A. (N. S.) 662; 41 L. R. A. (N. S.) 775; 5 L. R. A. (N. S.) 598; 139 Amer. St. Rep. 670; 33 L. R. A. (N. S.) 83; 100 S. C. 435. *An automobile is not in and of itself a dangerous instrumentality and only becomes dangerous*

FOOTNOTE.—As to liability of master to third person for damages caused by fire started by servant, see notes in A. & E. Ann. Cas. 1914a, 1102, 47 L. R. A. (N. S.) 1116, 49 L. R. A. (N. S.) 544.

*when used improperly, or in a negligent and careless man-
ner. The law which imposes upon the master the duty of
"consummate care" in the custody of things dangerous in
themselves, such as torpedoes, dynamite, etc., etc., is not
applicable to the care and custody of an automobile:* L. R.
A. 1915d, 691; 14 L. R. A. (N. S.) 216; 26 L. R. A. (N.
S.) 383; Berry Automobiles 144; 33 L. R. A. (N. S.) 81;
41 L. R. A. (N. S.) 779; 59 S. E. 338; 139 Am. St. Rep.
670. *The master is not responsible for the acts of the
servant beyond the real or apparent scope of his employ-
ment. If the servant steps outside of his employment to
do an act for himself not connected with his master's busi-
ness, and beyond the scope of his employment he is a stran-
ger to his master:* 5 Rich. L. 17-39 S. C. L.; 37 S. C. 199;
37 S. C. 377; 54 Am. St. Rep. 67; 47 Am. Rep. 794 Cyc.,
vol. XXVI, p. 1525; 58 L. R. A. (N. S.) 598; 86 Am. St.
Rep. 490; 59 S. E. 399. *The owner of an automobile can-
not be held liable for an injury occurring while the car is
being used by a servant for his own purpose and beyond the
scope of his employment. In order to charge the owner,
the person seeking recovery must establish the fact that at
the time of the injury the one using the car was acting
within the scope of his employment as the agent or servant
of the owner:* 97 S. C. 177; L. R. A. 1916a, 954, 957; 33
L. R. A. (N. S.) 83; 33 L. R. A. (N. S.) 79; Cyc., vol.
XXVI, p. 1536; 14 L. R. A. (N. S.) 216. *If injury occurs
while the servant is off duty and pursuing his own ends
exclusively, there can be no question of the master's entire
freedom from all liability, even though the injury com-
plained of could not have been committed without the facili-
ties afforded to the servant by his relation to his master:* 1
Sherman Red. Neg. (5th ed.), par. 147; 71 Am. St. Rep.
847; Cyc., vol. XXVI, p. 1536; 59 S. E. 339; 58 L. R. A.
(N. S.) 598. *As to agency:* 104 S. C. 157. *Ratification
of employee's act:* Clark Corporations 527; Thompson Cor-
porations (2d ed.) 5456; 26 Cyc. 1519; 100 Am. St. Rep.

909; 24 Am. Rep. 437; 26 Am. St. Rep. 249, 252; 8 Am. St.
Rep. 512, 518.

*Messrs. Simpson, Cooper & Babb,* for respondent, cite:
*As to refusal to direct verdict:* L. R. A. F. 228; 167 N. Y.
Supl. 992; 115 Pac. 1040; 33 R. I. 496; 2 Neg. and Comp.
Cas. 439.   *Charge on facts:* 25 S. C. 30; 51 S. C. 461; 74
S. C. 74; 69 S. C. 439, 443, 444; 100 S. C. 114.   *Contribu-
tory negligence:* 103 S. C. 84.

*Messrs. Featherstone & Knight* and *Dial & Todd* cite:
*As to evidence of servant's incompetency:* 17 A. R. 325; 10
A. R. 111; Thompson on Negligence, vol. IV, sections
4907-4909; U. S. Supreme Court Reports (31 Law Ed.)
296; American Annotated Cases (1912c) 92; Labatt on
Master and Servant, sec. 202; 89 S. C. 18; Jones on Evi-
dence, sec. 165; 12 Enc. of Law 1025; 42 A. S. R. 244; 17
Am. Reps. 328.   *Admissions of notice:* 79 S. C. 447.
*Agency:* 80 Wash. 543; 141 Pac. 1031; 33 Okla. 449; 41
L. R. A. (N. S.) 775; 199 Pa. 232; 144 Ga. 275; 87 S. E.
10; 3 S. C. 1; 7 S. C. 144; 19 S. C. 32; 21 S. C. 101; 67 S.
C. 398.   *Contributory negligence:* 7 A. & E. Enc. of L.
373, 375.   *Ratification of servant's act:* 20 A. & E. Enc.
of L. 179; 100 Am. St. Rep. 915; 2 Labatt Master & Serv-
ant, sec. 483; 6 Thomp. Negligence, secs. 71-75; Ann. Cas.
1912c, 419; 62 Am. Dec. 387; 15 Am. Rep. 375.   *Presump-
tion of agency:* 67 S. C. 395; 102 S. C. 146.   *Issue for
jury:* 105 S. C. 487; 93 S. C. 73; 57 S. C. 174.   *Negligence
in use of property:* 4 Metc. 49; Cooley Torts (3d ed.) 1414;
60 So. 115; 77 S. E. 618; 152 Mo. 415; 144 S. W. 52; 76
Atl. 219; 66 So. 805; 136 Am. St. Rep. 503; 100 Am. St.
Rep. 192; 127 *Ib.* 896; L. R. A. 1915d, 692; 152 Mo. App.
415; 133 S. W. 351; Berry Automobiles (2d ed.), sec. 603;
70 L. R. A. 627; 14 How. 468.

July 24, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

These two actions arise out of the same transaction, they were tried together below and here, they sound in tort to the property, the plaintiffs had verdicts, and the defendants have appealed.

These generally are the circumstances of the transaction: The Laurens Motor Car Company, hereinafter called the Motor Company, operated a garage in the city of Laurens for the sale of cars, the repair of cars, and the transportation of passengers; the defendant, Boyd, a young man 21 years of age, was in the Motor Company's service, carried the keys to the garage, and was a mechanic there; on the night before Thanksgiving, Boyd took a car out of the garage, got into it with another young man named Stone, drove several miles into the country, got two young ladies, and went for a "joy ride;" the fuel burnt out, and Boyd stopped in the middle of the night at Mr. Knight's residence to supply the car with gasoline; Mr. Knight, with a generosity which merited a more considerate adjustment of his loss, arose from his bed and gave Boyd a pan and a lantern, directed him to his own car by the barn, and told Boyd he might supply himself with gasoline from that car's tank; Boyd and Stone squatted themselves behind the car, put the lantern beside them, and loosened the plug underneath the tank; the escaping gasoline was ignited by the lantern, and the barn and contents and Knight's auto were consumed by fire.

There are 16 exceptions, but that one which goes to the root of the matter charges that the testimony does not make out a case, and the Court ought to have directed a verdict. We are of the opinion that exception must be sustained. There is testimony tending to prove that Boyd was a reckless driver; that he sometimes drove for the Motor Company; that he was drinking on the night of the accident; that he carried a key to the garage; that the president of the

Motor Company said to Knight, after the accident, that Boyd should not use the cars again; that Boyd remained in the service of the Motor Company after the event. There is not a word of testimony that Boyd was carrying Stone and the two ladies as passengers, or that he was about the business of the Motor Company on that night. There is no warrant in the testimony for the statement by respondents, in opening the argument here, that Boyd "took from his employer's garage one of its cars kept therein for the transportation of passengers, etc., and used same in going to, and carrying with him some passengers to, Gray Court, S. C., a town some 10 or 11 miles distant from Laurens. While returning with his passengers from said trip," etc.

The plaintiff's whole case is built upon that assumption, and there is no fact to support it. Mr. Knight did testify that, when Boyd hailed him in the night, Boyd said: "I want to borrow two gallons of gasoline from you, so I can carry the young ladies on home and carry the car and this gentleman back to Laurens." But that is all he said on that subject. The testimony in its entirety is altogether plain, and is susceptible of no other reasonable inference than that Boyd and Stone got into the car at Laurens for a pleasure ride; that they stopped at Mr. Dendy's, some three miles north of Laurens, and took in two young ladies with them for the same purpose of a pleasure ride; that the four proceeded several miles further north to the village of Gray Court; that they there turned back; that betwixt that point and Mr. Dendy's the gasoline in the car was exhausted, and they stopped at Mr. Knight's to supply themselves with gasoline, as before stated. There is nothing to the contrary. If this statement of the facts be true, and it is, then in our judgment the Motor Company is not liable for the misadventure. Mr. Knight was first of that opinion himself, because he says he then "did not know what the law was, * * * and did not know what the facts were."

When Boyd took the car out, and went for the purposes stated, he did not pretend to be acting for the Motor Company; nor, in fact, was he so acting. On the contrary, he was acting for himself, and not at all for the Motor Company. His conduct, therefore, did not purport to be for, and it in fact was not that of, the Motor Company. If that be so, the Motor Company is not liable for the result. There is no need to much discuss other cases, for their facts are diverse; the law of a case must follow the facts of that case. The facts do not bring this case within that of Littlefield's, 97 S. C. 177, 81 S. E. 487, or within Osteen's case, 102 S. C. 146, 86 S. E. 202, L. R. A. 1916b, 629.

But it is said that, whether Boyd was then about the business of his master or not, yet the master subsequently found out what had happened and ratified the act, and that makes the master liable, and further that there was testimony tending to prove that the Motor Company ratified the act of Boyd. And the testimony pointed to as tending to prove ratification is the retention of Boyd in the service of the master after the master had knowledge of the tort. It is true that a master may, after the event, approve the tort of his servant, and that is called ratification. But it is manifest that the master is liable without such approval, if the act was done by the servant while about the master's business. If the act done by the servant was about the master's business, but the servant went beyond his commission, the master is held liable if, knowing of the act, he should approve it after the event. And there are cases which rightly hold that under some circumstances the retention of the servant after the event is evidence of approval of the event.

But when Boyd committed the delict he was not acting at all for the master, and did not profess to be. He was acting solely for himself; and there is no such thing as a master assuming, by ratification, liability for an act of another in

which the master had no part. The principle is stated by Cooley, and he got it from the English Judges. Cooley says:

"In order to constitute one a wrongdoer by ratification, the original act must have been done in his interest, or been intended to further some purpose of his own." Torts, p. 127.

See, also, Story on Agency, sec. 455; *Dempsey v. Chambers,* 154 Mass. 330, 20 N. E. 279, 13 L. R. A. 219, 26 Am. St. Rep. 249.

The only facts which connect the Motor Company with the transaction are these: Boyd was in that period, but not at that instant, the servant of the Motor Company, and he was using the car of the Motor Company. It may be that, if Boyd had been carrying for the master passengers from Gray Court to Laurens, that is to say, was about his master's business, and went out of gasoline at Mr. Knight's house, and proceeded negligently to secure gasoline from Mr. Knight to finish the trip, in such a case the master of Boyd would be liable for Boyd's negligence thereabout. But, as before stated, the testimony does not at all tend to prove such a state of facts. Therefore, even if the retention of Boyd tended to prove that the Motor Company approved his conduct, yet the simple approval of the unlawful conduct of another about the other's own business, after it shall have happened, will not render the approver liable for the unlawful conduct of the other.

This conclusion renders altogether speculative the issues made by the other exceptions, and we shall not advert to them. Nor shall we consider if Boyd is exempt from liability under the law, for counsel for the appellant has not argued that question.

The judgment below is reversed as to the Motor Company, with direction to enter the same for the company.

The respondents, however, ought not to be taxed with the cost of an argument of 62 pages for the appellant. Rule 9, subd. 3, 104 S. C. 528, 90 S. E. 8, prohibits it. The respondents are liable, under the circumstances, to pay only for printing 10 pages of the appellant's argument. It is so ordered.

MR. JUSTICE WATTS did not participate in the consideration of this case.