## WHITE v. FIRESTONE TIRE & RUBBER CO.

### No. 4147.

Circuit Court of Appeals, Fourth Circuit.
June 14, 1937.

638

W. B. Wilson, of Rock Hill, S. C. (Wilson & Wilson, of Rock Hill, S. C., and W. L. DePass, Jr., of Camden, S. C., on the brief), for appellant.

D. W. Robinson, Jr., of Columbia, S. C. (James F. Dreher, of Lexington, S. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and HARRY E. WATKINS, District Judge.

HARRY E. WATKINS, District Judge.

This is an appeal from a judgment upon a directed verdict for the defendant, Firestone Tire & Rubber Company, in an action to recover damages for personal injuries to plaintiff, Mary Frances White, on account of the alleged negligence of one of defendant's salesmen, R. C. Garrett, in the operation of an automobile owned by defendant. Suit was instituted in the District Court for the Western District of South Carolina, in March, 1935, and the case was tried at Rock Hill, S. C., in March, 1936. The sole question for our consideration is whether the salesman, Garrett, was, at the time of the collision, engaged upon business of his employer, so as to make the latter liable for his tort under the doctrine of respondeat superior. At the conclusion of all the evidence, the trial court directed a verdict for the defendant upon the ground that the salesman, at the time of the accident, was on an "independent mission" of

his own. Judgment was entered for defendant and plaintiff has prosecuted this appeal.

On October 16, 1931, R. C. Garrett was in the employ of the Firestone Company as a salesman of automobile tires and accessories, with headquarters at Columbia, S. C. The company furnished him an automobile for his use in his business and paid the up-keep and operating expenses. The automobile assigned to Garrett had the word "Firestone" printed on each door. Its salesmen were employed upon a salary basis and their duties were to call upon agents or dealers who handled Firestone products and to take orders from them, and make suggestions as to their stocking and solicitation. The cars were to be used only for company purposes. J. C. Gillis, who owned a chain of filling stations and operated a wholesale gas and oil business, was one of Firestone's best customers, and he frequently purchased Firestone products from R. C. Garrett, the salesman whose territory included Kershaw county, and from E. P. Skelton, another salesman whose territory included Lee, Darlington, and Florence counties. Several days prior to the date of the accident, Gillis "got up" a party to go to the Citadel-Clemsen football game held in connection with the Pee Dee Fair at Florence, S. C., on Friday, October 16, 1931. A portion of the party went in a car owned by a Mr. McLeod, and a portion in the Firestone car driven by Garrett. In the latter car were Garrett, Gillis, and L. B. Scott, a friend of Gillis. Each of those who went to the game paid for his own ticket. On the morning of the football game Garrett left his headquarters in Columbia, driving the Firestone car assigned to him, and upon reaching Camden, S.C., went to the filling station of his customer and dealer, Gillis, where he parked his car. The same morning a Mr. Underwood, who was the Firestone district manager over this territory, left his office in Charlotte, N. C., en route to Columbia, S. C., with Skelton as a passenger in his car. Instead of going from Charlotte to Columbia by the shortest paved route, Underwood drove from Charlotte to Camden, where he stopped at the Gillis filling station. After leaving Skelton there, Underwood proceeded on his journey to Columbia. Shortly thereafter the same morning, the two salesmen, Garrett and Skelton, their customer Gillis, and Scott, who had met Garrett for the first time that morning, got into the Firestone car driven by Garrett and proceeded in the direction of Florence, where Skelton roomed and where

the football game was to take place. While passing through Bishopville, which was on the usual route from Camden to Florence, they stopped at a filling station operated by Gillis and a Mr. Des Champs, which sold, along with gasoline and oil, certain Firestone products. They stopped for the purpose of having a drink and to say "hello" to Mr. Des Champs, the manager. After some conversation outside and inside the filling station, they got back into the Garrett car and drove on to Florence, where they stopped at another filling station operated by a Mr. Wilkin, which sold, along with its gas and oil, Firestone products. Both filling stations were in Skelton's territory. No Firestone business was transacted, no business was solicited, no orders were taken, and no goods were sold at any of the filling stations. From there the party went to Skelton's room to permit him to change his clothes, and from there to the football game. There was some drinking on the trip. The liquor which was drunk at Camden and which was taken on the trip was furnished by Gillis. While at his rooms Skelton gave them a drink, and from his supply took a bottle or two to the game. The party took no drinks after the game, had supper together, and about dark, Garrett, Gillis, and Scott left Florence for Camden. After traveling about half this distance, at Lee's Cross Roads, the Firestone automobile, driven by Garrett, collided with another automobile in which the plaintiff, Mary Frances White, was riding, inflicting the injuries complained of. The drivers of both cars were killed. Some three and one-half years after the collision, the plaintiff brought this suit. She seeks to hold the Firestone Company responsible for Garrett's alleged negligence on three theories, as follows:

First, that Garrett was on company business, in that he transported Skelton, another salesman, from Camden to Florence.

Second, that Garrett and Skelton were promoting Firestone business, in that they stopped at three filling stations on their way to the game where Firestone products were sold.

Third, that the purpose of the trip was to entertain Gillis who was a large purchaser of Firestone products.

■ We are of the opinion that the evidence does not support any of these theories. On the contrary, the Firestone Company was clearly entitled to a directed verdict. Before a master is responsible for the torts of his servant, the servant must not only be acting in the course of his employment, or within the scope of his authority, but must be actually engaged in his employer's business at the time of the injury. P. F. Collier & Son Distributing Corporation v. Drinkwater (C.C.A.4th) 81 F.(2d) 200, 204; Martin v. Greensboro-Fayetteville Bus Line, 197 N.C. 720, 150 S.E. 501; 3 C.J.S., Agency, 187. The general rule is well established. The master's responsibility cannot be extended beyond the limits of the master's work. If the servant is doing his own work, or that of some other, the master is not answerable for his negligence in the performance of it. Standard Oil Co. v. Anderson, 212 U.S. 215, 221, 29 S.Ct. 252, 254, 53 L.Ed. 480. Elkhorn Piney Coal M. Co. v. Hazelett (C.C.A.6th) 62 F.(2d) 137, 138.

■ There is no evidence that Garrett attended to any business of the Firestone Company either in Florence or en route, or that the trip was to any degree a part of his employment. On the contrary, the undisputed evidence shows that the trip was arranged for the sole purpose of attending the football game. There is not a scintilla of evidence to show that Garrett left his territory for the purpose of taking another salesman home. The undisputed evidence shows that Gillis, the customer, actually promoted the party, furnished the liquor which was taken on the trip, and took with him as a member of the party, his guest Scott, who was a stranger to Garrett. Nothing was done on the trip by Garrett in the performance of his master's work, in whole or in part, directly or indirectly. This is not a case where, in the course of a continuing relation, both business and private ends have been coincidently served, but is a "departure so manifest as to constitute a complete abandonment of duty, exempting the master from liability until duty is resumed." Notes, 17 A.L.R. 621; 29 A.L.R. 470. Peabody v. Marlboro Implement Co., 63 App.D.C. 288, 72 F.(2d) 81.

In South Carolina where this collision occurred, the principles herein stated have been applied. See Knight v. Laurens Motor Car Co., 108 S.C. 179, 93 S.E. 869, L.R.A. 1918B, 151; Watson v. Kennedy, 180 S.C. 543, 186 S.E. 549; McFadden v. Anderson Motor Co., 121 S.C. 407, 114 S.E. 402; Holcombe v. W. N. Watson Supply Co., 171 S.C. 110, 171 S.E. 604.

For the reasons assigned, the judgment of the lower court is affirmed.

Affirmed.