## DOMAREK v. BATES MOTOR TRANS-PORT LINES, Inc.
### No. 6262.

Circuit Court of Appeals, Seventh Circuit.
Dec: 3, 1937.

· Charles C. Spencer and Richard M. Spencer, both of Chicago, Ill., for appellant.

Emil C. Wetten, Charles H. Pegler, and Paul N. Dale, all of Chicago, Ill., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

BALTZELL, District Judge.

On January 9, 1936, appellant filed an amended complaint in the District Court, wherein he sought to recover damages from appellee and one Mike Cartin for personal injuries which are alleged to have been sustained by him on January 16, 1934. It is alleged that the injuries so sustained were the result of the negligent acts of appellee and Cartin in the operation of a certain

motortruck upon Paulina street, near its intersection with Monroe street, in the city of Chicago, Ill.

The trial of the case was begun on January 19, 1937, at which time Greydon L. Walker, attorney of record for Cartin, suggested to the court the death of Cartin, which he said had occurred on April 23, 1936. A jury was impaneled and, by order of court, the trial proceeded against appellee. At the close of all the evidence appellee entered its motion for a directed verdict in its favor, upon which motion the court reserved its ruling. On January 25, the case was submitted to the jury upon proper instructions of the court. The jury continued its deliberation until some time the following day, at which time it reported that it was unable to agree upon a verdict and was discharged. At the time of the discharge of the jury, the court assigned for hearing on February 13, the motion of appellee for a directed verdict which had theretofore been entered and ruling thereon reserved. On February 25, the District Court entered an order in which it found, as a matter of law, that there was no evidence introduced which would support or justify a verdict in favor of the plaintiff (appellant). It also found, as a matter of law, that the motion of appellee for a directed verdict, which was entered at the close of all the evidence, "should have been granted and that the jury should have been instructed to find the defendant (appellee) not guilty." A final judgment was entered in favor of appellee, from which judgment appellant is prosecuting this appeal.

It is the contention of appellant that the District Court had no authority, under either the Illinois statute or the federal authorities, to enter judgment in favor of appellee after the jury had disagreed and failed to return a verdict. It is his further contention that, even though such authority exists, the evidence required the case to be submitted to the jury for determination. On the other hand, appellee contends that it was within the power of the District Court, and within its jurisdiction, to enter judgment in favor of appellee under the Illinois statute and the federal authorities, even though the jury had disagreed and failed to return a verdict. It further contends that there was no competent evidence supporting the claims of appellant and, therefore, no question of fact for submission to the jury.

Two questions are here presented for determination. First. Did the District Court have authority to enter judgment for appellee upon its motion for a directed verdict in its favor entered at the close of all the evidence, even though the jury failed to agree and was discharged without returning a verdict? If the first question is answered in the affirmative, the second question necessarily follows; namely, Was there any substantial evidence to support appellant's claim, thus requiring the case to be submitted to the jury?

In determining the first question, it is necessary to consider both the Illinois statute and the federal authorities bearing thereon. There was enacted by the Legislature of the state of Illinois, in the year 1933, a statute known as the "Illinois Practice Act." Following is one of the provisions of that act: "Hereafter in all civil actions at law, in courts of record, if either party shall at the close of the testimony, and before the case is submitted to the jury, request the court for a directed verdict in his favor, the court may reserve his decision thereon, and submit the case to the jury under proper instructions as to the law applicable to such case. After the case is thus submitted to the jury, or after receiving and recording the verdict of the jury and before judgment is entered in said case, the court may hear arguments of counsel for and against said request, but in all cases shall receive and record the verdict of the jury as rendered. If the court shall then decide as a matter of law, that the party requesting the directed verdict was entitled thereto, the court shall enter its decision on the record and order judgment in accordance with such decision notwithstanding the verdict entered, and the party against whom such judgment is entered shall have an exception to such action of the court as a matter of course. If such request is denied an exception in favor of the party making such request shall follow as a matter of course." Subdivision 3 (a), section 192, c. 110, Smith-Hurd Ill.Stats. Subdivision 3 (a), paragraph 196, c. 110, Illinois Revised Statutes, 1935.

The Supreme Court of Illinois has promulgated certain rules governing the practice under this statute, among which is rule 22, as follows: "The power of the Court to enter judgment notwithstanding the verdict may be exercised in all cases where, under the evidence in the case, it would

have been the duty of the Court to direct a verdict without submitting the case to the jury." Section 259.22, c. 110, Smith-Hurd Ill.Stats. paragraph 245, c. 110, Illinois Revised Statutes, 1935.

It is conceded by appellant that, if a verdict had been returned by the jury in the instant case, the District Court would then have had authority, under the Illinois statute and the rules of the Supreme Court of that state, to hear argument upon the motion for a directed verdict, ruling upon which had been reserved, and to enter a judgment in accordance with the law, notwithstanding the verdict. He contends, however, that since the jury failed to return a verdict, no such authority exists.

It is apparent that the question presented for determination requires an interpretation of the section of the Illinois Practice Act, above quoted. It was admittedly the intention of the Legislature, in enacting the statute, to simplify procedure and to expedite litigation. The procedure, as outlined in the statute, is not new, as similar statutes have been in force in other states for several years. It recognizes a well-established practice of permitting the court to reserve its ruling upon questions of law arising during the trial. In discussing this subject, the Supreme Court of the United States, in the case of Baltimore & Carolina Line, Inc., v. Redman, 295 U.S. 654, 55 S.Ct. 890, 892, 79 L.Ed. 1636, said:

"At common law there was a well-established practice of reserving questions of law arising during trials by jury and of taking verdicts subject to the ultimate ruling on the questions reserved; and under this practice the reservation carried with it authority to make such ultimate disposition of the case as might be made essential by the ruling under the reservation, such as nonsuiting the plaintiff where he had obtained a verdict, entering a verdict or judgment for one party where the jury had given a verdict to the other, or making other essential adjustments.

"Fragmentary references to the origin and basis of the practice indicate that it came to be supported on the theory that it gave better opportunity for considered rulings, made new trials less frequent, and commanded such general approval that parties litigant assented to its application as a matter of course. But, whatever may have been its origin or theoretical basis, it undoubtedly was well established when the Seventh Amendment was adopted, and therefore must be regarded as a part of the common-law rules to which resort must be had in testing and measuring the right of trial by jury as preserved and protected by that amendment.

"This Court has distinctly recognized that a federal court may take a verdict subject to the opinion of the court on a question of law."

At the time of the submission of the instant case to the jury, the court had reserved its ruling upon the motion of appellee for a directed verdict in its favor. The motion presented to the court a legal question which must have been determined by it, and not by the jury. The court had the motion under advisement at the time the jury reported its inability to arrive at a verdict. Furthermore, the order of the court discharging the jury also fixed a time for argument and hearing upon the motion, to which there was no objection by appellant. The statute in question afforded the court an opportunity to study the record and to determine, before making its ruling, whether or not, as a matter of law, there was substantial evidence to support the claim of appellant. It would be a strained construction to say that, had the jury agreed upon a verdict after nineteen hours of deliberation, the court could then have entertained the motion upon which ruling had been reserved, but, since it failed to so agree, it had no such authority. We do not believe that the Legislature so intended. It was no doubt the intention of the Legislature, in enacting the statute, to preserve to the court the authority to rule upon such a motion after the jury had been discharged, regardless of whether or not it had returned a verdict.

■ It cannot be said that such authority is in violation of the Seventh Amendment. Baltimore & Carolina Line, Inc., v. Redman, supra. The court has ample authority to give a directed verdict without submitting the case to the jury in the first instance, and it would seem that the fact that it was submitted and not decided by the jury would not deprive the court of afterwards ruling upon a motion which presented solely a question of law upon which its ruling had theretofore been reserved.

■ Appellant, in his reply brief, has called attention to the fact that the Legislature amended the statute in question in July of 1937 specifically empowering the court to act upon a motion for a directed

verdict seasonably entered and ruling thereon reserved "if no verdict is returned." Laws 1937, p. 991, Smith-Hurd Ill.Stats. c. 110, § 192, subd. (3) a. It is the contention of appellant that the amendment indicates clearly that the Legislature did not intend, in the original statute, to thus empower the court. We cannot agree with this contention. It was doubtless the intention of the Legislature, in enacting the amendment, to clarify the original act and to make it declaratory of its original intention.

"An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended." 25 R.C.L., Statutes, § 288, p. 1064; In re Hurle, 217 Mass. 223, 104 N.E. 336, L.R.A.1916A, 279, Ann.Cas.1915C, 919.

The District Court had authority, under the Illinois statute and the federal authorities, to determine the motion upon which it had reserved its ruling, even though the jury had failed to agree and had been discharged prior to its ruling upon such motion.

The next question for determination is whether or not there was any substantial evidence to sustain the claim of appellant, thus requiring the submission of the case to the jury. On January 16, 1934, one Mike Cartin was a resident of the state of Missouri, and was the owner of a truck registered in that state under his name. License plates were issued to him by that state and were attached to the truck at all times in question. Appellee was a corporation engaged in the trucking business, with its headquarters at 3812–24 South Normal avenue, Chicago, Ill. It transported a large quantity of freight for others for hire. It owned several trucks and some equipment, but was compelled to engage the services of other truck owners to transport freight for it because its equipment was insufficient to meet its requirements. It owned and operated a garage where supplies were kept and repairs were made of its own equipment. Early in the month of January, 1934, it was contacted by Mike Cartin, at its terminal in Chicago, and inquiry made of it as to whether or not it wanted to hire any extra help and equipment. Inquiry was also made by him at that time as to the amount of compensation to be paid for his services and for the use of his equipment, in the event his services and equipment were needed. He was advised that at times appellee was required to employ extra help and equipment and that the compensation paid for such help and equipment depended upon the size of the cargo and the amount paid by the shipper for transportation. He was also advised that he would be free to haul for anybody else whom he might desire, if he was employed, and that he would not be paid a salary, but would be paid only for the trips made by him. No written contract was entered into between him and appellee, but he did make a few trips for appellee during the first half of January of that year, and a few trips thereafter, using his own truck and providing his own supplies for same. During the time in which he did some hauling for appellee he never kept his truck in its garage, never had any repairs done there, never received any supplies from there, and never purchased any supplies there.

Cartin had made a trip to Dayton, Ohio, for appellee, returning on January 16, 1937. After making a delivery immediately following his return from Dayton, he was advised by appellee that there was nothing further for him to do. He then left its terminal station with his truck empty, and was no longer in its employ during that day. Upon his road home, he stopped at a restaurant at Harrison and Halsted streets, Chicago, where he met an acquaintance by the name of Nick Darrus. He and Darrus left the restaurant together, entered the truck and started for Cartin's home. En route they drove north on Paulina street to its intersection with Monroe street, where Cartin reduced his speed before attempting to cross that street. A street car at that time was going south on Paulina street and stopped to permit some passengers to alight before entering Monroe street. A woman who had alighted from the street car passed behind it and attempted to cross to the east side of Paulina street. While in the street, the truck driven by Cartin approached from the south at a moderate rate of speed and struck and injured her. In his effort to avoid striking her, Cartin drove his truck to the extreme right of the street, ran over the curb, upon the sidewalk, and struck a building. Appellant was walking south upon the sidewalk on the east side of Paulina street when he first saw the truck coming toward him. The truck was then about four feet from the building. Appellant jumped in an effort to avoid being struck, but was unable to prevent it. He was struck by the bumper of the truck, pinned against the building, and severely injured.

526

Several persons were near the scene of the accident and later testified as witnesses at the trial of the case. One witness testified that the truck which was being driven by Cartin had painted on its sides the words "Bates Motor Transport," "Bates Motor Transportation," or "something like that." Another witness testified substantially to the same effect. This was all the evidence introduced by appellant in his case in chief which shed any light upon the ownership or control of the truck. Each of these two witnesses was rather vague in his testimony in attempting to describe either the color of the painted words or their size.

Appellee filed a motion for a directed verdict in its favor at the close of appellant's case, upon the ground that no substantial evidence was introduced in behalf of appellant to support his charges. This motion was denied by the court upon the theory that a presumption of ownership and control of the truck had arisen by virtue of the testimony of the two witnesses as to the words painted on the sides of the truck. The evidence of appellee, which was introduced following the denial of its motion, was uncontradicted upon the question of the ownership and control of the truck at the time of the accident. It showed that the truck was owned by Cartin and was in his exclusive possession and control at that time. He was engaged in his own business and was transacting no business of any kind or character for appellee. Thus, it will be seen that the evidence of facts introduced by appellee as to the ownership, possession, and control of the truck at the time of the accident was contrary to the presumption which arose from the testimony of the two witnesses. The presumption, which was rebutted by facts, vanished and ceased upon the introduction of evidence of such facts. See Del Vecchio et al. v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229; Falstaff Brewing Corporation v. Thompson, (C.C.A.8) 89 F.2d 557; Curry v. Stevenson, 58 App.D.C. 162, 26 F.2d 534; Osborne v. Osborne, 325 Ill. 229, 156 N.E. 306.

At the close of appellee's evidence, the District Court permitted appellant to introduce in evidence a letter from appellee, under date of January 27, 1934, addressed to Joseph Steller, the lawyer who then represented appellant, acknowledging receipt of a letter from him under date of January 22, 1934, concerning the accident. This letter in no manner admits liability and cannot possibly be so construed, or have any bearing upon the facts in this case. The District Court also permitted certain exhibits to be introduced in evidence at the same time, which show the filing of a complaint against appellee and Cartin in a state court by the woman who was injured in the accident in question, service of appellee, removal to federal court, etc. One of the exhibits contains a stipulation showing the cause dismissed, "all costs having been paid, and the matters and things in controversy having been settled." It cannot be seriously contended that this evidence shows any admission upon the part of appellee of any liability, sheds any light upon the ownership, possession, or control of the truck at the time of the accident, or has any connection whatsoever with the instant case.

Cartin was not in the employ of appellee at the time of the accident in question, nor was the truck in its possession or control at that time. It, therefore, was not responsible for his acts. Duke Power Co. v. Greenwood County et al. (C.C.A.4) 91 F. 2d 665; White v. Firestone Tire & Rubber Co. (C.C.A.4) 90 F.2d 637.

There being no substantial evidence in support of appellant's claim, the court, having authority so to do, properly entered a finding and judgment in favor of appellee. The judgment of the District Court is affirmed.