16033

STEVENS v. MOORE *ET AL.*

(46 S. E. (2d) 73)

*Messrs. Frank G. Tompkins,* of Columbia, and *Barnwell & Whaley,* of Charleston, for Appellant, Southern Railway—Carolina Division,

*Messrs. J. C. Long* and *Arthur Rittenberg,* of Charleston, for respondent,

502

*Messrs. Frank G. Tompkins,* of Columbia, and *Barnwell & Whaley,* of Charleston, for Appellant, Southern Railway—Carolina Division, in reply,

January 20, 1948.

STUKES, J.: The respondent in this appeal was employed as a pipefitter at the Charleston Navy Yard and was en route therefrom to the City on the six-lane U. S. Highway No. 52, known locally as the Meeting Street Road, after five o'clock in the afternoon on June 9, 1944. He was riding his motorcycle and carrying a passenger on the "buddie" seat behind him. The traffic was heavy and he collided with the rear of an automobile operated by the defendant Moore which, it was alleged, was stopped or slowed and turned to the left without warning or signal, in violation of the applicable statutes. The motorcycle was upset and the riders thrown to the pavement. Respondent was severely and permanently injured, for which he brought this action for damages against Moore, the automobile and Southern Railway—Carolina Division. The latter for convenience will be called the railroad company.

In the complaint it was alleged that Moore was an employee of the railroad company and was engaged in the performance of the duties of his employment and was in the scope of it at the time of the alleged tort. The answer of the company admitted that Moore was its employee but denied that he was at the time engaged in the performance of his duties, within the scope of his employment. Trial resulted in verdict and judgment against all of the defendants for $10,-000.00, from which only the railroad company appealed.

It contended principally at the trial that Moore was using his privately owned and maintained automobile whereas the company furnished him a railroad hand-car for transportation about his duties, hence there was no liability upon it for tort committed in the operation of the automobile and

moreover that the accident occurred after Moore had finished his duties for the day and therefore it did not occur in the performance of his duties or within the scope of his employment. Consideration of these contentions requires further statement of the relevant facts which were disclosed by the evidence.

Moore was track supervisor of appellant in the Charleston area, an engineering college graduate with several years' experience in his position. He said in testimony that his duties were to inspect all tracks, see what work was needed and what funds must be appropriated each month, and that his territory covered the Charleston area of the company, from Lane to that City, including main lines, branch lines and industrial tracks; that the foremen were under him except that in the case of a small job he would superintend it himself. On the day of the accident his duties took him to North Charleston, beyond the scene of the accident from the City of Charleston, where the company was building a spur track for West Virginia Pulp & Paper Company. He was there during the morning and until about one o'clock P. M. when he returned to Ann Street in the City, using his automobile all the while in the discharge of the usual duties of his employment. The company maintained living quarters on Ann Street for its employees in need of them but Moore went there on this occasion to see about unloading some equipment expected from Atlanta which was to be used in the repair of the North Charleston Yard of the company, which was eight miles away. He stayed there for that purpose about an hour and a half and thence returned to North Charleston where the industrial spur track, which has been mentioned, was under construction. He testified that he would not be able to be there on the next day and that he wanted to see that all necessary equipment was on the ground. At Ann Street he talked to a Mr. Campbell who was employed in the electrical department of the company and told Moore that he wanted to go to Green Street where his superior, Mr. Way, and a Mr. Otterburg, also an em-

ployee of the electrical department, were engaged in their respective employments at the coal pier of the company at the end of Green Street, and Mr. Campbell wished to join them. Instead of leaving Campbell at the corner of Green Street and Meeting Street Road, Moore carried him in his automobile the additional mile and a half to the coal pier. Thence Moore drove on to the Paper Company's track under construction in North Charleston in furtherance of his duties there. Meanwhile he had told Messrs. Campbell, Way and Otterburg that he would return via the coal pier and take them back to the City. En route back there, between 5:30 and 5:45 P. M., he had the accident on Meeting Street Road as he turned left out of the line of heavy traffic toward the intersection of Green Street. The recital contained in this paragraph is largely drawn from the testimony of Moore.

Of importance upon the crucial issue of scope of employment was the testimony of respondent's witness, Wright, which was admitted over objection by the trial court as a part of the *res gestae*. He was a passenger in an automobile following that of Moore and, at the instant of the accident, also following respondent's motorcycle. He testified that he and the other occupants of his automobile got out of it and went to the aid of the injured men and unsuccessfully attempted to stop passing cars to send them to the hospital. Then he approached Moore who had driven on into Green Street, parked and was partly out of his car looking back at the scene of the collision. Wright inquired of Moore whether his car was damaged, to which he replied in the negative. Wright then asked him if he had intended to turn into Green Street. The testimony at that point is here quoted:

"Q. You asked the man what he was aiming to do? A. Yes, sir, he said he was going down to the railroad track; said he worked for the Southern Railway. I asked him if he would take the men to the hospital in his car. He said he didn't know whether he had time to do it, as he had some men working up where he come from and that he had to go down in here.

"Q. What did he point to when he said he had to go down in here? A. Had to go down to some job or something, down the railroad track.

\* \* \*

"Q. You said you asked him what he was aiming to do; what did he say? A. He said he was going down to a job; that he worked for the railroad. He said he had some men working back where he came from. I asked him about taking the men to the hospital, and he said he didn't know whether he had time, as he had to go to some job, seemed like; he said he had to go down there.

"Q. Where did he indicate he had to go? A. Down that road to the railroad.

"Q. Down Green Street? A. Green Street. I never did know the name of it."

In the cross-examination, with reservation by appellant's counsel of his former objection, the following appears:

"Q. Mr. Wright, what was the conversation you had with Mr. Moore? A. I asked him what he was aiming to do. He said he was going down to the job; said he worked for the Southern Railroad.

"Q. Do you remember whether he said he was going to pick up three people? A. No sir, he said he had some men working back there.

"Q. And was going down to the dock? A. No, sir, he said he was going down to the railroad."

The superintendent of the Charleston Division of the company testified that Moore was its track supervisor with supervision and maintenance of a portion of the Charleston Division which did not include the coal pier of the company at the end of Green Street which was within the jurisdiction of the Bridge Department, that Moore's duties consisted of the maintenance of tracks on land only. It is inferable therefrom that the company's track along or near Green Street to the coal pier was under the supervision of Moore, but not the pier itself. The superintendent further testified that

Moore was instructed to use the hand-car, which he described as a small motor car, for transportation in his work and that he was never instructed to use his automobile; and that he had an expense account and could use a taxicab; and that if Moore were asked by the superintendent (and inferably a fellow-employee or a junior) to carry him any place to work in his automobile, should he do so "it would be more as a personal favor." He said that Way was from Greensboro and Otterburg from Charlotte and that they worked all over the company's different divisions and had no jurisdiction over Moore.

Reverting to Moore's testimony, he said that he had used his automobile in the company's business before, as he admittedly did all of the day of the accident. According to the witness, Wright, Moore first said after the accident that he did not have time to take the injured men to the hospital for he had to go on down to the pier, but he finally did, Moore said in five or six minutes after the accident, and stayed at the hospital from thirty to forty-five minutes; then he went to Ann Street, picked up another employee who had just come in and was winding up his day's work, and returned to the scene of the collision to investigate the skid-marks, etc. During his stay at the hospital where he had carried the injured, he was interviewed by two police officers who had been called to the scene and thence promptly went to the hospital. They testified that Moore told them that at the time of the collision he had left one job and was going to another, one of the officers saying that the statement by Moore was that he was going down Green Street to check a job. The latter hearsay evidence was admitted upon the question of the credibility of the witness, Moore, and not as *res gestae*. Moore had previously been asked on cross-examination whether he had made these statements to the officers, which he denied in part. The propriety of the admission in evidence of Moore's statements to the officers, just mentioned, is not challenged by the exceptions.

This partial résumé of the evidence is sufficient for the consideration of the questions argued by appellant. They do not touch the validity of the verdict and judgment against Moore and the offending automobile, or allege any error in the trial with respect to them. Hence the facts and circumstances of the collision itself, as shown by the evidence, have not been fully stated for they are not relevant to the appeal.

The reception in evidence of Moore's statement to Wright, at the scene of the accident and on the heels of it, was proper upon the question of whether he was at the time in the course of his employment. Dean Wigmore would not call it *res gestae* as do our cases, but a spontaneous statement or exclamation. He brands the courts' use of the term *res gestae* as "mere muttering of a shibboleth." Sec. 6 Wigmore on Evidence, 3d Ed., 131 *et seq.* The well known justification for this exception to the rule against hearsay evidence is that such an explanation of the transaction under investigation is probably the truth of it for the speaker is without time to reflect and contrive a false or misleading explanation. Appellant's objection upon the ground that the declaration in this instance was one of agency, proof of which by statement of the agent alone is improper under our decisions, is without merit because the agency, or at least the employment of the declarant, was admitted in the answer of appellant and substantiated by the testimony of its witnesses. That much was not in issue. The issue in this connection was whether at the time of the tort Moore was acting in the scope of his employment. No reason for exclusion of his spontaneous or *res gestae* utterance on that subject appears. A third person's similar statement would have been admissible, why not his?

The decisions in this and other jurisdictions are uniform that the admission or rejection of *res gestae* testimony is largely discretionary with the tral court. Its probability of truth depends upon the particular facts and circumstances of the case in which it is offered. Mr. Wigmore so strongly approves the rule of discretion of the trial

judge that he advocates finality of the disposition on trial. 6 Wigmore on Evidence, 3d Ed., 154. See *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742, and earlier decisions there cited, and *Marks v. Pearlstine,* 203 S. C. 318, 26 S. E. (2d) 835. That there was no error in the exercise of discretion in this case is demonstrable from our decisions.

The crux of appellant's contention is, as has been indicated, that a servant's or agent's declaration at the time of the commission of a tort, although properly a part of the *res gestae* and ordinarily admissible as such, is not competent against the master to show that the tort was committed at a time when the servant or agent was about the master's business or, as usually' stated, within the scope of his duties. But our cases do not recognize the suggested distinction; on the contrary, they negative it as will be seen, and logically so. Moore's statements at the scene of the accident, a part of the *res gestae,* which related to his destination and mission, unfolded the transaction. The fact that they tended to establish scope of agency made them as important in such "unfolding" as if they constituted admissions of negligence in the operation of the automobile. Whether or not he was acting for the master at the time of the collision was as important inquiry as whether he was guilty of negligence. Both were basic issues in the trial and his *res gestae* statements which were pertinent to either were equally admissible in evidence.

For his ruling the trial judge relied largely on *Chantry v. Pettit Motor Co.,* 156 S. C. 1, 152 S. E. 753, 759, and appellant has attacked the soundness of that decision and asked for review of the authority of it. However, it goes so much further than the circumstances of the present case require that it need neither be relied upon for affirmance nor reviewed. Apparently the only evidence that the negligent driver there was in the service of the defendant, besides the rebuttable presumption which arose from the fact that the vehicle was the master's, was a *res gestae* statement by him which was in conflict with all of the other testimony. Here,

on the contrary, Moore was returning to the City from an errand admittedly within his duties to the master when he made his fateful turn or stop in traffic. Dispute is only as to the nature of his activity after the turn or stop. Did his course thereupon become a personal one or was it in or incidental to his master's service? This the jury has answered against the master; and it was within their province upon the evidence adduced.

Careful consideration has been given the *Chantry case* and the able and elaborate dissenting opinion has been reviewed. The latter, even, is of no aid to appellant. The burden of it is that the jury were permitted to find agency of the driver of the offending vehicle solely from his declaration upon the occasion of the accident which, it was said, related to a pre-existing fact and therefore the statement did not have the necessary quality (to make it admissible *res gestae*) of explanation of the event (the accident) under investigation. Here the answer admitted the agency or employment of Moore so no harm came to appellant from that content of the declaration. The dissenting opinion in the *Chantry case* reaches this case in its approving citation of the following from 2 C. J. § 695; 3 C. J. S. Agency, § 322. "While the declarations of an alleged agent are of themselves incompetent to prove agency, if the agency is otherwise *prima facie* proved, they become admissible in corroboration, where they constitute a part of the *res gestae* and were made at the time of the transaction in question. Thus, where the agency has been established by independent evidence, the declarations of the agent are competent to show that he acted as agent and not on his individual account, or to show the nature and extent of his authority."

The point at issue was in *Lowie v. Dixie Stores,* 172 S. C. 468, 174 S. E. 394, 395. The holding of the court, which is quite pertinent here, can best be given by quoting briefly from the opinion, as follows: "The second exception charges error because a witness was allowed to testify that the car that struck plaintiff went about a hundred and fifty yards

and stopped; that he went immediately to it; that in response to the question where he was from, the driver told him he worked in town at the Dixie stores and had been out delivering groceries. We think the presiding Judge properly exercised his discretion in admitting the testimony as *res gestae*."

The case is of considerable similarity to *Snipes v. Augusta-Aiken Ry. & Electric Corporation,* 151 S. C. 391, 149 S. E. 111. There the vital fact was, as here, whether the servant's tort was committed when he was in the scope of his duties. He testified in effect that he, though driving the principal's car, was upon a personal mission. The subsequent declaration of his superior in employment, also an admitted agent of the corporate defendant, was received to show the tort-feasor's status at the time of the tort. The present case is a stronger one for the admission of the declaration for the purpose stated for it was clearly competent as a part of the *res gestae*. That ground of admission was at least questionable in the *Snipes case,* not here.

The dissenting opinion in the *Snipes case,* just cited, prompts the remark that an interesting feature of this phase of the present appeal is untouched by the briefs and therefore will not be discussed but it may be mentioned. Why was the challenged statement not competent as an admission by the admitted agent or servant which was competent against the employer without regard to the doctrine of *res gestae?* See 4 Wigmore on Evidence, Sec. 1078, p. 119 *et seq.*; *Price v. American Agr. Chemical Co.,* 173 S. C. 518, 176 S. E. 352; and *Nock v. Fidelity & Deposit Co.,* 175 S. C. 188, 178 S. E. 839, 98 A. L. R. 757.

Appellant urges two related grounds of defense: first, that Moore was on a personal mission; second, that the company had not authorized the use of his car by him and is therefore not liable for his torts in its operation. The second disappears in the light of the evidence. Moore testified that he sometimes used the car in the performance of his duties and it is fairly inferable that his superiors knew

that. Certainly he was using it all of the day in question. In view of this and other of the evidence, it would have been surprising had it been concluded by the jury that the company had no knowledge, express or implied, of this practice.

■ The first ground referred to in the preceding paragraph presents a difficult question of fact which the jury has also resolved against appellant. If Moore intended his detour via Green Street to the company's coal pier (only to pick up his fellow-employees and take them to the company's living quarters for its transient employees) to further the master's business, it may reasonably be said to have been incidental to his employment and, in that case, the jury properly found the master liable for his tort in accord with the rule of *respondeat superior. Nelson v. American-West African Line,* 2 Cir., 86 F. (2d) 730. It was within the province of the jury, not the court, to pass upon this key fact by weighing and evaluating the relevant evidence. It is not amiss to add that even under Moore's testimony at the trial, in repudiation of his statements at the scene of the accident, his intended mission down Green Street was not a purely personal one, foreign to his employment, as were the travels of the servants in the cases of *Knight v. Laurens Motor Car Co.,* 108 S. C. 179, 93 S. E. 869, L. R. A. 1918-B, 151, and *Holder v. Haynes,* 193 S. C. 176, 7 S. E. (2d) 833. See the differentiation of these decisions in *Carroll v. Beard-Laney,* 207 S. C. 339, 35 S. E. (2d) 425.

*Wilson v. Power Co.,* 166 S. C. 469, 165 S. E. 186, 188, is controlling to the contrary of appellant's position that Moore's ownership of the automobile absolves the master of liability for its tortious operation, in view of the testimony that appellant furnished him a hand-car for his transportation about the master's business. But it is uncontradicted that he at least occasionally used his automobile in the company's business, as he undisputedly did on the day of the accident. In the cited case of Wilson the defendant's employee, whose duties were somewhat similar to Moore's here, used his own car in going about his work but the master

contended that it was a certain, agreed one upon which the master might carry insurance against liability for negligent operation. In driving another car of his own in the master's work the employee injured the plaintiff and the court overruled the contention that is now made in the instant case and tersely said: "The instrument with which the alleged injury to the plaintiff was inflicted, if it was inflicted, is not in our opinion, material, and we cannot agree with the trial judge in his holding, in effect, that the defendant should not be held in damages because the said agent and employee happened to be using his Chevrolet automobile * * *." It is thus seen that ownership of the instrumentality is unimportant. The vital query is its use at the time. This accords with the general rule in other jurisdictions. See the Annotation in 140 A. L. R. 1150 and the earlier A. L. R. Annotations there cited.

The conclusion is that whether Moore was acting within the scope of his employment at the time of the accident was a jury issue and was properly submitted to that fact-finding body. Certainly there was doubt and that required submission to the jury. The following is quoted from *Adams v. South Carolina Power Co.,* 200 S. C. 438, 21 S. E. (2d) 17, 18: "The terms 'course of employment' and 'scope of authority,' are not susceptible of accurate definition. What acts are within the scope of employment can be determined by no fixed rule. The authority from the master is generally to be gathered from all the surrounding and attendant circumstances. In cases where the deviation is slight and not unusual the Court may, and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, as in *Holder v. Haynes,* 193 S. C. 176, 7 S. E. (2d) 833, the Court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremities will be regarded as involving merely a question of fact, to be left to the jury. 5 Am. Jur., Section 376, Page

714. We have held in numerous cases that if there is doubt as to whether the servant in injuring a third person was acting at the time within the scope of his authority, the doubt will be resolved against the master at least to the extent of requiring the question to be submitted to the jury for determination. *Hyde v. Southern Grocery Stores,* 197 S. C. 263, 15 S. E. (2d) 353; *Cantrell v. Claussen's Bakery,* 172 S. C. 490, 174 S. E. 438; *Matheson v. American Telephone & Telegraph Company,* 137 S. C. 227, 135 S. E. 306."

Automobiles have added immensely to the ubiquity of agents and servants. The courts cannot close their eyes to this fact and to the commonplace practice of employees going from job to job in automobiles, sometimes owned by them and sometimes by their employers. The ownership of the offending vehicle in a case like that in hand makes no difference to an injured plaintiff and it should not with respect to the responsibility of the employer, whether he owns the vehicle or it is the property of the tort-feasor employee, if the latter's use of it in the performance of the duties of his employment is with the knowledge, express or implied, of the employer. In the instant case Moore was a sort of roving employee and it is easily inferable from the evidence, as has been said, that his use of his automobile in the performance of his duties was known to the superintendent and other representatives of the employer.

It follows that there was no error in the refusal of appellant's motions for directed verdict, new trial and judgment *non obstante veredicto.* There remain for consideration an assignment of error with respect to the court's instructions to the jury and the contention that the verdict against the appellant violated the instructions given. We turn to these questions.

Appellant presented a request to charge as follows: "I further charge you that, in the absence of other evidence tending to establish agency, a declaration or statement made by an employee tending to establish

agency, or, in other words, tending to show that at the time in question he was engaged in the business of his employer, cannot be considered by you in determining whether he was or was not engaged in such business."

After instructing in accord with the foregoing, the court added: "I further charge you in that connection that under the pleadings in this case, it is admitted that Moore was an employee of the railroad company, and the only issue for you to determine is whether or not, at the time in question, he was acting within the scope of his duties for the railroad company."

It appears that the modification of the request was necessary to avoid confusion of the jury. Its premise was: "In the absence of other evidence tending to establish agency." Employment of Moore was admitted in the answer of appellant. The issue in this connection was whether at the time of the accident Moore was engaged in that employment. The modification was proper.

Finally, portions of the charge to the jury are set forth with which it is contended that the verdict conflicted. We do not think so. These excerpts from the instructions have been carefully examined. The gist of them is that verdict against appellant was permissible only if the jury found from the preponderance of the evidence that at the time of the accident Moore was using his automobile with the express or implied knowledge of appellant and in its business, within the scope of his employment. There was no error in these instructions and the verdict was entirely consistent with them, in view of the evidence.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.