**UNITED STATES v. SHARPE et al.**

No. 6233.

United States Court of Appeals Fourth Circuit.

Argued April 10, 1951.

Decided May 10, 1951.

Morton Hollander, Attorney, Department of Justice, Washington, D. C. (Newell A. Clapp, Acting Asst. Atty. Gen., Ben Scott Whaley, U. S. Atty., Russell D. Miller, Asst. U. S. Atty., Charleston, S. C. and Paul A. Sweeney, Attorney, Department of Justice, Washington, D. C., on brief), for appellant.

Henry H. Edens, Columbia, S. C. (Henry Hammer, Columbia, S. C., and Lybrand & Simons, Aiken, S. C., on brief), for appellees.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the United States from a judgment under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b). The plaintiffs were injured in the collision between an automobile in which they were riding and an automobile owned and driven by Sergeant Ernest Thompson. The trial judge held the United States liable under the Tort Claims Act for the negligence of Sergeant Thompson and the correctness of this ruling is the only question presented by the appeal.

Sergeant Thompson was a member of a paratroop company which had been stationed at Fort Bragg, North Carolina, and which, in September 1948, had been ordered to move to Eglin Field in Florida, a distance of 750 miles. The movement was accomplished by truck convoy and by air transport; but Thompson and a few others who owned automobiles obtained permission to drive them to Eglin Field, traveling at their own expense and responsibility and without allowance of mileage and under passes which imposed no duty upon them except to report at Eglin Field at midnight on September 10. Thompson was driving his own car and was subject to no orders with respect thereto. He had been given a briefing, which was no more than general information as to the best available route to follow on his journey, but he was under no duty to follow this route so long as he reported at Eglin Field upon the expiration of his pass. He had been told that he could report at Camp Gordon or Fort Benning for lodging with the convoy if he so desired; but there was no duty resting upon him to do so. It was while he was operating his car under these circumstances, that he had the collision which resulted in the injury of plaintiffs.

It is perfectly clear from the evidence that, in operating the automobile, Sergeant Thompson was acting, not within the scope of his office or employment as a sergeant in the army, but for his own use and benefit and subject to the control of no one but himself. It is true, of course, that he was required by the army to be at Eglin Field by midnight of September 10 and that he was on his way there when the collision occurred; but the army provided transportation by truck convoy or air transport for those who were being moved to that post and, if Sergeant Thompson had not asked a pass so that for his own purposes he might carry his automobile with him, he would have been traveling with the army convoy in government supervised transportation and the accident which resulted in the injury of plaintiffs would not have occurred. The government is no more liable for his acts under such circumstances than it would have been if the collision had occurred while he was stationed at Fort Bragg and absent from his post of duty there on a pass. The fact that he was going to Eglin Field where it was his duty to report at a certain time does not impose liability on the government, for he had undertaken to get there on his own responsibility and the operation of the automobile was undertaken on that responsibility, not as an activity of the government. It would be as reasonable to hold the United States liable for injuries inflicted by a clerk of court while using his private automobile in traveling to the place of holding court.

The case is controlled in all its material aspects by our decision in United States v. Eleazer, 4 Cir., 177 F.2d 914, 916. That was the case of a lieutenant in the Marine Corps who was driving his automobile while on deferred leave but under orders to report at a post to which he was being transferred on a certain date. The status of the soldier there was not different from that of Sergeant Thompson here. Both were under orders to report at a distant point on a date certain and both were traveling in their privately owned automobiles for purposes of their own without government supervision or control. The question as to the liability of the government for the acts of a soldier driving an automobile under such circumstances was thoroughly considered in that case in the light of the controlling authorities and the conclusion reached that the respondeat superior doctrine did not apply to render the government liable, because the soldier was not acting within the scope of his office or employment. What we said in that case is

applicable to the facts here and particularly the following: "Under these circumstances we think that judgment should have been entered for the government. The United States is liable under the Tort Claims Act only where the employee who causes injury is 'acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' Sec. 410(a) (now 28 U.S.C.A. § 2674). It seems perfectly clear that, in driving his own automobile on this trip home on deferred leave, Lieutenant Talley was acting, not within the scope of his office or employment as a lieutenant in the Marine Corps, but for his own use and benefit and subject to the control of no one but himself. It is true that he had been ordered to report on September 1 at Corpus Christi and had been directed to travel there so that he could be reimbursed for the expense of travel at the regular mileage rate; but he and not the government selected the means of transportation and no officer of the government had any right to exercise control over his operation of the means chosen. All that the government was interested in was that he report for duty at Corpus Christi on Sept. 1, and he could travel there by rail, by bus, by car or by air as he saw fit. When he chose to drive his own car, instead of availing himself of commercial transportation, he was acting in furtherance of his own purposes, not those of the government; and his action in driving the car cannot reasonably be said to have been action taken within the scope of his employment or office."

It is argued that the pass held by Thompson was issued for a period in excess of the 72 hours permitted by military regulations, but this does not help plaintiffs. The accident occurred within the 72 hour period for which the pass was valid; and even if it be treated as void ab initio the result is, not that Thompson was operating the automobile in line of duty, but that he was absent from duty without leave. It will hardly be contended that the United States is liable for the acts of soldiers while AWOL.

Attempt is made to distinguish the Eleazer case on the ground that the collision there occurred in North Carolina and was governed by North Carolina law. The question at issue, however, is whether Sergeant Thompson was "acting within the scope of his office or employment" within the meaning of the statute in operating his automobile; and this involves a question of statutory construction as to which the federal courts are not bound by local decisions but apply their own standards. Feres v. United States, 340 U.S. 135, 142–144, 71 S.Ct. 153; United States v. Standard Oil Co., 332 U.S. 301, 305–306, 67 S.Ct. 1604, 91 L.Ed. 2067; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956; Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694. We look to the federal law and decisions to determine whether or not the person who inflicted the injury was an "employee of the Government * * * acting within the scope of his office or employment". We look to the local law for the purpose of determining whether the act with which he is charged gives rise to liability. The Tort Claims Act adopts the local law for the purpose of defining tort liability, not for the purpose of determining the relationship of the government to its employees.

Even though we look to the law of South Carolina, however, we find no basis for distinguishing the case at bar from the Eleazer case. The cases relied on by plaintiffs [1] hold merely that the master is liable for the negligence of a servant operating an automobile in the master's business even though the automobile belongs to the servant. There is nothing in these which can be construed as imposing liability on the master for the negligence of the servant in the operation of an automobile for the servant's purposes. The law in South Carolina as elsewhere is clearly to the contrary. In Holder v. Haynes, 193 S.C. 176, 186, 7 S.E.2d 833, 838, the Supreme Court of South Carolina quoted with approval and

1. Wilson v. South Carolina Power Co., 166 S.C. 469, 165 S.E. 186; Stevens v. Moore, 211 S.C. 498, 46 S.E.2d 73.

242

relied upon the very passage quoted by this Court at 177 F.2d 917, from Linville v. Nissen, 162 N.C. 95, 101, 77 S.E. 1096, 1099, as holding that the doctrine respondeat superior did not apply in the Eleazer case, viz.: "This doctrine applies only when the relation of master and servant is shown 'to exist between the wrongdoer and the person sought to be charged for the result of wrong at the time and in respect to the very transaction out of which the injury arose.'"

For the reasons stated, the judgment below will be reversed and the cause will be remanded with direction to enter judgment for the United States.

Reversed.