Margaret **BAKER**, Administratrix, Estate of Dot John Baker, deceased, and State Farm Mutual Automobile Insurance Company, a corporation, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Nos. 3015-52, 5808-52, 5807-52.

United States District Court, District of Columbia.

Jan. 28, 1955.

645

J. Joseph Barse (of Welch, Dailey, Welch), Washington, D. C., for plaintiffs.

Joseph A. Rafferty, Jr., Asst. U. S. Atty., Washington, D. C., Robert L. Toomey, Asst. U. S. Atty., Washington, D. C., Leo A. Rover, U. S. Atty., Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Plaintiffs bring this action against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), to recover damages suffered in an automobile collision with an army truck.[1]

On February 23, 1952, at nighttime, between 10:15 and 10:30, as plaintiffs were proceeding north along Route No. 2, Caroline County, Virginia, in two cars, some two and one-half miles north of Bowling Green, Virginia, the lead car was struck by an army truck which then proceeded to collide with the rear civilian car in a head-on direction. The army truck was driven by one Sergeant Graves who was stationed at the time at Camp A. P. Hill, Virginia, as a caretaker.

1. Pertinent provisions of the Act read as follows:

28 U.S.C.A. § 1346(b):

" * * * the district courts * * * shall have * * * jurisdiction of civil actions on claims against the United States, for money damages * * * for * * * personal injury or death caused by the negligent or wrongful act * * * of any employee of the Government while acting within the scope of his office or employment, under circumstances where * * * a private person, would be liable to the claimant in accordance with the law of the place where the act * * * occurred."

28 U.S.C.A. § 2671:

" 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

Dot John Baker, driver of the rear car, was killed. This suit is brought by his widow, Margaret Baker, administratrix of the estate of the deceased, to recover for the wrongful death of decedent and pecuniary loss and damage sustained by herself and her infant children, Yvonne Jeanette Baker and Christine Sheila Baker. Vergie Ellen Lewis and Percy Waller, passengers in the motor vehicle operated by Dot John Baker, were seriously injured and seek to recover for necessary care and treatment, for pain and suffering, and for loss of income.[2]

Counsel stipulated that all three cases be consolidated.

At the time of the accident, Sergeant Graves was assigned a truck for use in connection with his duties as caretaker of the A. P. Hill Army Reservation. He was permitted to go off post with the vehicle only after receiving special authorization accompanied by a trip ticket stamped "off-post".[3]

On the day of the accident, Sergeant Graves was "present for duty" from 0100 to 2400, meaning that he was not confined, in sick bay, or A.W.O.L. He was "on-duty" during the day until 5:00 P. M. At about 7:00 P. M. he drove to the Post Headquarters on the Reservation in the truck, chatted for a while with the switchboard operator, then left for Bowling Green about 9:00 P. M., allegedly to get a haircut. Sergeant Graves had no trip ticket nor any type of authorization for the trip.

There is a conflict in testimony as to the direction in which the Sergeant was traveling at the time of the accident; he says he was going north, back to the army post; plaintiffs maintain that *they* were going north, that the army truck was going south and hit them in a head-on direction. In fact, plaintiffs can only sustain their theory of negligence upon the premise that Graves was traveling south, away from the Post.

Plaintiffs contend that Sergeant Graves was negligent; that since the Government owned the truck and Graves was an employee of the Government, the defendant must overcome the presumption, under Virginia law, that such ownership and employment creates an agency relationship, thereby fixing Graves within the scope of his employment for purposes of the Tort Claims Act; that the Government has failed to rebut this presumption; that Graves' continuous possession of the truck for such use as making a seven-mile trip from Travis Lake, where he lived, three times a day for his meals, indicates that the truck was to be used for general necessities, such as getting a haircut at Bowling Green when needed; that while trip tickets were required even to get meals (and if Graves were to go off base with the truck, for any purpose, these trip tickets would have to be stamped "off-post") it was an accepted practice to have this formality carried out in advance as well as retroactively; that on the day of the accident there was no dispatcher available to distribute or stamp the needed trip tickets, but had one been available the ticket would have been stamped *at* that time in line with the usual practice to issue trip tickets to go to Bowling Green, and had there been no accident, trip tickets would have been issued Monday to cover the week end. Realistically appraised, assert plaintiffs,

2. The State Farm Mutual Insurance Company seeks to recover, under a subrogation clause in the insurance policy, those payments it made upon destruction of the rear car.

3. Army Regulations provide, in pertinent part, as follows:

"26. Use of vehicles. * * *

"b. Motor vehicles * * * will be operated when not in convoy only if properly dispatched on DD Form 110 (Vehicle and Equipment Operational Record) issued by the dispatching motor pool or under such instructions as the appropriate commander under existing authority may direct."

"d. No officer or employee of the Department of the Army at the seat of the Government or in the field, within or without the continental limits of the United States, is authorized to use an official passenger vehicle for other than the actual performance of official duties."

Graves' unrestricted use of the vehicle for a broad range of legitimate purposes must logically be considered to cover a trip to Bowling Green to get a needed haircut, unobtainable on the Post. This, plaintiffs urge, combined with the prevailing practice of issuing trip tickets for such purpose, places Graves within the scope of his employment and makes the Government liable for his negligence.

The Government contends that even if negligence be found, the plaintiffs have failed to prove that Graves was acting within the scope of his employment, as required to hold the Government liable; rather, he was on a frolic of his own, serving no official purpose or business of the Government; that the mere fact he was a soldier is not sufficient to establish agency, but rather the plaintiffs must prove by preponderance of the evidence that Sergeant Graves was engaged in his master's business at the time of the accident; that they have failed to do so, since it is uncertain as. to what Graves was really doing at the time of the accident, and if it were to get a haircut, this is personal and not official business; that while Graves' failure to obtain trip tickets indicates the unofficial nature of the trip, even if he could have gotten them according to prevailing practices, this would not make his mission official, for no superior officer may authorize the use of an army vehicle for such an unofficial mission. The Government also asserts that the question of scope of employment must be determined by federal law and not Virginia law, and since Graves was not serving his master, nor intending to do so, since no actual control or right to control existed; since he was acting subject to no orders at a time when he was off-duty, the Government is not liable.

The Court is satisfied that Sergeant Graves was going south at the time of the accident and that it was his negligence which caused the accident. Whether or not he was acting within the scope of his employment is the critical issue. This question is not to be determined by Virginia law. Plaintiffs, in seeking to make use of the presumption of agency under Virginia law, have confused the question of liability as to negligence with the question of whether the activity causing the injury was committed within the scope of employment. In United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239, 241, involving a question of whether an army sergeant involved in an automobile accident was acting within the scope of his employment, the Court decided that the issue of scope of employment was one of statutory construction as to which the federal courts were not bound by local decisions but apply their own standards. It was there stated:

"We look to the federal law and decisions to determine whether or not the person who inflicted the injury was an 'employee of the Government * * * within the scope of his office or employment.' We look to the local law for the purpose of determining whether the act with which he is charged gives rise to liability. The Tort Claims Act adopts the local law for the purpose of defining tort liability, not for the purpose of determining the relationship of the government to its employees."

This rule finds support in many cases. Williams v. United States, 9 Cir., 1954, 215 F.2d 800, 806–810; United States v. Inmon, 5 Cir., 1953, 205 F.2d 681, 684; Field v. United States, D.C.N.D.Ill. 1952, 107 F.Supp. 401, 403–405; Hubsch v. United States, 5 Cir., 1949, 174 F.2d 7, 9–10.

Not only is there no presumption of agency in the federal courts on the basis of ownership or employment, but the doctrine of *respondeat superior,* as applied to the military, is narrowly construed under the Tort Claims Act:

The Act "* * * carefully delimited the area of federal liability for a tortious act of (as here) a soldier, by providing that such liability would attach only when the act

was committed while the soldier was 'acting in line of (military) duty.' This careful delineation provides a clear line of demarcation between Government liability for a soldier's torts and the area of general liability of a private employer for torts of his employees in classical 'master and servant' cases where the rule of respondeat superior is normally applied." Williams v. United States, supra, 215 F.2d at page 807.

■ Plaintiffs must establish by affirmative evidence that the Government employee was acting not for some independent and personal reason, but was acting to further the official purposes of the Government. United States v. Lushbough, 8 Cir., 1952, 200 F.2d 717, 720–721; Field v. United States, supra, 107 F.Supp. at pages 402–405; United States v. Inmon, supra, 205 F.2d at page 684.

We cannot overlook the fact that:

"* * * Congress made abundantly plain that federal liability can arise *only* when the tortious act was committed at a time when the tort feasor member of our military or naval forces was actually 'acting in line of duty.' Unless we are prepared to utterly disregard this mandate and refuse to conform to its obvious meaning, we must (as we do in this case) hold that 'acting in line of duty' means *acting in line of military duty*." Williams v. United States, supra, 215 F.2d at page 808.

■ The Court is unable to perceive how Sergeant Graves was acting in the scope of his employment when he took an army truck, while he was "off-duty", without authorization, without trip tickets stamped "off-post", allegedly to get a *haircut in Bowling Green.* Whether or not he could have obtained the required trip tickets retroactively to cover the trip is not controlling, for a loose army practice of issuing trip tickets does not convert a personal excursion into one in line of military duty. We cannot:

"* * * close our eyes and agree that a loose post 'practice' of 'passing around' trip tickets issued only for *official use,* (when the actual use is not for official business) in some undisclosed way transformed the use * * * into an authorized 'official use'." Williams v. United States, supra, 215 F.2d at page 808.

While we doubt that one going to get a haircut under the prevailing circumstances would be acting in line of official duty, we need not reach this issue as plaintiffs have failed to establish exactly what Sergeant Graves was doing at the time of the accident. If, as plaintiffs contend, he went to Bowling Green about 9:00 P. M., found the barbershop closed, went to Maud's Grill, staying no more than fifteen minutes, and then immediately started back for Travis Lake, it would seem that Sergeant Graves should have been going north at the time of the accident—the same direction in which plaintiffs were traveling. In that event, plaintiffs' theory of negligence would fall. But the evidence indicates he was going south. For some unexplained reason he had either been to Bowling Green and was again going there, or he had never been to Bowling Green and was going there for the first time on some venture unknown to the Court. Whatever official military business was involved fails to appear. This, read in light of the fact that Sergeant Graves was off-duty, subject to the control of no one but himself, on an unauthorized mission, makes it unreasonable to conclude that Graves was acting in the scope of his employment at the time of the accident.

■ Under the Federal Tort Claims Act the Government has waived its sovereign immunity only as to those claims falling squarely within the four corners of the Act. Though the temptation is sometimes acute, we are not to substitute personal compassion for the considered and written intent of Congress. To grant plaintiffs' relief would

be to materially enlarge that qualifying phrase of the act which limits Government liability to wrongful acts of its employees committed within the scope of such employment or office—in the case of the military, in line of duty.

Upon consideration of the oral arguments and written briefs, and upon all the evidence presented in open court and filed here, the Court concludes plaintiffs have failed in their burden of proof to establish that defendant was within the scope of his employment at the time of the accident. Other issues involved herein therefore become moot.

Counsel for the Government will prepare an order consistent with these findings.