Josephine **LEONARD**, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

A. Joseph **WILLIAMS**, Administrator of the Estate of Cora Mae Leonard, deceased, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

Civ. Nos. 3735, 3750.

United States District Court
D. Wyoming.

May 13, 1955.

Teno Roncalio and A. Joseph Williams, Cheyenne, Wyo., for plaintiffs.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for defendant.

KENNEDY, District Judge.

The above entitled actions are consolidated for the purpose of trial as each grows out of the same transaction. They are based upon a collision between two cars, taking place on U. S. Highway 30 about 35 miles west of Cheyenne, Wyoming, in which the plaintiff Josephine Leonard suffered serious injuries and her daughter, Cora Mae Leonard, represented by the administrator of her estate, A. Joseph Williams, was killed. The actions are brought under what is commonly known as the "Tort Claims Act" inasmuch as the driver of a government car was a member of the military service.

The cases were tried under the provisions of the above named Act to the Court without the intervention of a jury. At the close of the trial it was agreed by and between counsel and the Court that the cases would be submitted on trial briefs within a time specified, which have now been filed, and the matter is before the Court for consideration.

While counsel seem to be in some disagreement in their analysis of the facts this would appear to be more implications drawn from the facts themselves rather than any serious disagreement as to the actual proofs of the transaction and the surrounding pertinent circumstances. No transcript of the evidence

696

has been made and both counsel and the Court will be compelled to draw largely upon their independent recollections of what the evidence actually is.

The Court will attempt to give what may be considered as its own theory of the pertinent facts in as concise a sketch as possible. The plaintiff, Josephine Leonard, in case No. 3735, in company with her fourteen year old daughter, plaintiff's intestate in case No. 3750, on July 1, 1953, were returning from a trip to California in a Pontiac car driven by the plaintiff, their last stop for the night being at Salt Lake City, from which they proceeded on the morning of July 1st eastward to where the accident occurred approximately 15 miles east of the city of Laramie. During that day they had made two brief car service stops and had provided for their meals with food eaten in the car. There the collision occurred between the plaintiff's car and a government owned Chevrolet car driven by Sgt. Fred S. Williams, Jr. This car was owned by the United States and transferred to the University of Wyoming and by that institution assigned to an R.O.T.C. unit, which was being conducted at that institution. Sgt. Williams was a member of that unit and had been for some time before. The officers there in charge granted him considerable latitude in the use of the car and consented to its use by him on the day the accident occurred. Williams had previously made an application to be considered for an Air Cadet and had previously come to Warren Air Force Base and taken an examination for that purpose. Some question was raised as to his physical condition upon the first application and the officials at Laramie were notified that an additional examination as to his physical condition would be required. Thereupon he proceeded to Warren Air Force Base by use of the Chevrolet car and spent the greater portion of the day at Warren Air Force Base. After visiting the examining authorities he proceeded to perform certain errands at the request of some of his companions at Laramie, including a number of errands for himself, and sub-sequently left the Warren Air Force Base by the back gate and proceeded on the road north and west of the Base to the juncture with U. S. Highway 30 and from thence on westward until the accident occurred. While Sgt. Williams remembers distinctly all of his transactions while he was in and about Cheyenne and Warren Air Force Base he testified that he remembered nothing after he first entered upon Highway 30, either before, at the time, or after the accident occurred, until he woke up in the hospital. This incident seems to be almost incredible to the Court although of course it is possible. With such a distinct recollection, followed by a complete loss of memory up to and including the time of the accident, presents the query as to whether or not the attitude of the sergeant was genuine or taken with an idea of relieving him as much as possible from the results which followed. Perhaps the Court is somewhat influenced by the events in a previous trial by the identical attitude taken by the occupants of a car by members of the military establishment resulting in a very serious accident in which one was killed and others severely injured and maimed for life. However, the matter of whether the lapse of memory by the sergeant was genuine or feigned has little particular significance in the decision of the case at bar because the results are to be determined by the physical facts, absent his version of the transaction.

The accident itself occurred in broad daylight on what might be considered a rolling country and on an excellently designed and equipped highway in excess of 40 feet wide without any substantial curves and with visibility practically unobstructed for considerable distance in both directions. It would seem almost incredible that two cars going in opposite directions on such a highway could meet in collision except by prearrangement. The plaintiff's car was the first of four cars driving at a speed of approximately 50 miles an hour. According to plaintiff's testimony she first observed the Williams car when about 100

# 697

yards distant and it was then on her side of the highway; that she drove to her side of the highway until the right hand wheels were on the shoulder and apprehending that the Williams car was coming toward her she suddenly turned to her left seeking to get on the other side of the highway and thereby avoiding a collision when the cars met in collision near the center of the highway, the impact being slightly to the north of the center line. The only testimony as to anyone who saw the accident other than the plaintiff was that of Edna L. Kunkel, which consisted of a statement made by her to a representative of the plaintiff and likewise a statement made by her to a representative of the defendant, it being stipulated by counsel that the statements would be received in evidence to the effect that she would so testify if called as a witness for the plaintiff as to the statement made to the representative of the plaintiff and on cross-examination made to the representative of the defendant. It appears from these statements admitted in evidence pertinent here is that when this witness saw the Williams car coming in the opposite direction she drove to the side of the road and stopped her car and afterwards drove into the barrow pit, which was not deep. The particular relevancy here is: In the first statement she stated "When I looked up I saw a blue Chevrolet coming toward us in our lane". In the so-called cross-examination statement in regard to when she saw the car coming she said that "the car was then straddling the center line". The exact position of the Williams car has some significance in one phase of the case as to whether or not it was wholly in the wrong lane when seen or was straddling the center line. It bears somewhat upon the claim of alleged contributory negligence on the part of the driver of plaintiff's car.

Considerable evidence has been introduced concerning the conditions surrounding the place of the accident, including experiments of cars driven in both directions and off the highway into the so-called barrow pit, which was accomplished without difficulty or danger, together with a projection of the course of the Williams car tending to show it was gradually proceeding back to its proper side of the road. No attempt has been made in the foregoing to delineate or outline all the circumstances which are relevant to a decision of the issues involved but only those which would seem from the Court's recollection to be the pertinent and elementary facts upon which a decision may be based. Suffice it to say that the Court considers this a very important case on account of the fact as to the plaintiffs that a serious injury was suffered by the plaintiff herself which may be permanent and the tragedy of the death of her daughter which invokes the sympathy of everyone, in which frame of mind is always the feeling that there should be some pecuniary recompense if at all possible. On the other hand it is likewise of definite importance to the government as under the Tort Claims Act the right of recovery from which it was formerly immune has been broadened to a permission of such suits but within a limited scope laid down by the Act itself and it has not been an easy thing for the courts to define that limitation.

The first and most important question is to determine whether Sgt. Williams, the driver of the car, was acting within the scope of his employment.

The second question is, should the answer to the first question be in the affirmative, was Sgt. Williams negligent and if so, did the contributory negligence of the plaintiff cause the proximate cause of the accident.

The pertinent statutes seems to this Court to be as follows: Title 28 U.S.C.A. § 1346(b), which reads:

"(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims

against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Title 28 U.S.C.A. § 2671:

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

" 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

■ As before stated, the books are heavily laden by the Courts in defining the phrase "while acting within the scope of his office or employment" as it may be affected by the additional phraseology in the case of a member of the military or naval forces of the United States, "acting in line of duty". The trial briefs of counsel are very generous in their scope and show diligence in the matter of research. Scores of citiations are given not only from texts but from decisions of the courts. It would be impossible for the trial court in the consideration of this case to examine them all in the time allotted. Concerning the scope or limitation of the Tort Claims Act, without reference to the particular facts involved, this Court has concluded that two decisions by that eminent jurist

Chief Judge Parker of the Fourth Circuit are the most satisfactory in a discussion of that phase of the subject. In the first case herein cited the Judge quotes approvingly from a decision of the Fifth Circuit written by Chief Judge Hutcheson, who is the eminent Chief Judge of that circuit at the present time. In United States v. Eleazer, 177 F.2d 914, at page 918, the Court says:

"It is argued, however, that, because the Tort Claims Act provides that, in the case of a member of the military or naval forces, 'acting within the scope of his office or employment' means 'acting in line of duty', the responsibility of the United States under the respondeat superior doctrine is greatly enlarged, since the phrase as used in prior legislation is construed to cover conduct without as well as within the scope of employment as ordinarily understood. We are not impressed with this argument. It was the manifest purpose of Congress, plainly set forth in the words of the statute, to render the United States liable for the torts of its employees with certain specified exceptions, just as though it were a private person; and there could have been no possible reason to extend the rule of respondeat superior in the case of torts committed by military or naval personnel. The words of the statute relied on by plaintiff were doubtless used because it was felt that as to military and naval personnel 'line of duty' more correctly described action representing the government than 'scope of employment'; but it is clear, we think, that neither phrase as used in the act was intended to do more than provide for liability on the part of the government for acts committed by those carrying on its business under such circumstances as to render it liable therefor if it were a private person. Directly in point is the decision in United States v. Campbell, 5 Cir., 172 F.2d 500, 503, certiorari denied 337 U.S. 957,

69 S.Ct. 1532, [93 L.Ed. 1757]; and we are in thorough accord with both the reasoning and the conclusion of the opinion in that case, wherein Judge Hutcheson, speaking for the court, said:

" 'The whole structure and content of the Federal Tort Claims Act makes it crystal clear that in enacting it and thus subjecting the Government to suit in tort, the Congress was undertaking with the greatest precision to measure and limit the liability of the Government, under the doctrine of respondeat superior, in the same manner and to the same extent as the liability of private persons under that doctrine were measured and limited in the various states. The very heart and substance of the act is to be found in the words, "scope of his office or employment," not as appellee would read them when wrenched out of their context, but as they are precisely limited in it to the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the state where the injury occurs.' "

In United States v. Sharpe, 4 Cir., 189 F.2d 239, Judge Parker again discusses the function of the Federal Courts and arrives at the conclusion that in the matter of statutory construction the Federal Courts must apply their own standards and at page 241 discusses the matter in the following language:

"Attempt is made to distinguish the Eleazer case on the ground that the collision there occurred in North Carolina and was governed by North Carolina law. The question at issue, however, is whether Sergeant Thompson was 'acting within the scope of his office or employment' within the meaning of the statute in operating his automobile; and this involves a question of statutory construction as to which the federal courts are not bound by local deci-

sions but apply their own standards. Feres v. United States, 340 U.S. 135, 142–144, 71 S.Ct. 153 [95 L.Ed. 152]; United States v. Standard Oil Co., 332 U.S. 301, 305–306, 67 S.Ct. 1604, 91 L.Ed. 2067; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956; Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694. We look to the federal law and decisions to determine whether or not the person who inflicted the injury was an 'employee of the Government * * * acting within the scope of his office or employment'. We look to the local law for the purpose of determining whether the act with which he is charged gives rise to liability. The tort Claims Act adopts the local law for the purpose of defining tort liability, not for the purpose of determining the relationship of the government to its employees."

■■ As to the facts in each case cited, it is recognized that they are almost universally different and each case must rest upon its own individual facts in the matter of the application of the law. It would be a heavy task to consider the individual circumstances surrounding each cited case. In the case at bar it seems that Sgt. Williams should be regarded as a member of the military forces although he was at the time associated with an R.O.T.C. unit of the Wyoming University, the operations of which unit were controlled by that institution. The car which he was driving was owned by the United States but was assigned to the University and by it to its R.O.T.C. unit and in that capacity it was being used and operated by the sergeant at the time of the accident. The sergeant himself was authorized by the officials in charge of the unit to use the car and had their consent to make the trip to Warren Air Force Base for the purposes heretofore designated. On that trip he performed a number of missions for himself and the accommoda-

tion of his associates which the testimony indicates was not objectionable and perhaps permitted by such R.O.T.C. officials. There is evidence that he received hospital treatment as a result of the accident as one in "line of duty", which, of course is no more than saying that he received the same treatment that any soldier would receive at military institutions while he carried the classification of a soldier in the service. Coming closer to what this Court conceives to be the deciding factor in the case is the question of whether he was acting in the scope of his office or employment at the time. From a recollection of the evidence—his application to be considered as an Air Cadet was not a compulsory requirement but a voluntary one. The application for such consideration was an open one subject to his own voluntary desire to apply for it or not. It was likewise subject to his own personal conclusion to reappear for a second examination and it was not by directive order but by simply a notice to the authorities at Laramie that it would be necessary for him to appear again in order to complete the preliminary steps to be accepted as suitable for the position to which he was aspiring. It would seem that from a general review of the evidence that no penalty was attached in the event he decided not to pursue his application further. Can it be said that under these circumstances he was at the time of the accident "acting within the scope of his employment" or as defined in the above stated statute for members of the military "acting in line of duty"? As it seems to this Court to bring Sgt. Williams within the limitation of the above Acts and to hold that he was acting in the scope of his employment and in line of duty would be unduly extending the scope of the Act and practically ignoring the fact that on the day in question his movements were voluntary so far as his military mission was concerned and purely personal as to the other purposes of his trip.

In a recent decision by Judge Youngdahl, not cited by counsel, Baker v. United States, D.C., 127 F.Supp. 644, 648, it appears that a military sergeant in that case was driving a government car and the government was sued under the Tort Claims Act for the damage suffered through his negligent acts. Under the facts there broadly construed the case was decided for the government upon the ground that at the time the accident occurred the employee was on a mission of his own rather than serving in line of duty since he was acting subject to no orders at the time. In one portion of the opinion the Court remarks as follows:

"Under the Federal Tort Claims Act the Government has waived its sovereign immunity only as to those claims falling squarely within the four corners of the Act. Though the temptation is sometimes acute, we are not to substitute personal compassion for the considered and written intent of Congress. To grant plaintiffs' relief would be to materially enlarge that qualifying phrase of the act which limits Government liability to wrongful acts of its employees committed within the scope of such employment or office—in the case of the military, in line of duty."

For the reasons stated it must be found that Sgt. Williams at the time of the accident was not acting within the scope of his employment or in line of military duty. The defense of the government on this phase of the case will therefore be sustained.

■ Undoubtedly the foregoing conclusion of the Court that the driver of the government car was not at the time of the accident acting within the scope of his employment and in the line of duty would dispose of the case at least for the time being. Thinking along the line, however, of practical results should a higher court not agree with the conclusions reached as to the employment feature, it would mean a reopening of the case to determine the question on negligence. As the matter is now fresh in the minds of both court and counsel it would seem that this Court might with

propriety express its views upon this element of the case. The question of negligence as distinguished from that of employment is to be determined by state law.

As before stated, it seems almost incredible that an accident of this character could occur on such a wide road, with practically unobstructed vision, and this factor would therefore seem to be important in a decision upon the question of negligence.

 The Court will have little hesitation in determining that the driver of the government car was negligent in driving his car in the wrong lane and the evidence clearly shows that the collision with plaintiff's car occurred while he was still partially in the wrong lane, being astride the center line. His position was therefore one which was attributable to the collision which occurred. The principal question, however, is as to whether or not the driver of the plaintiff's car was guilty of contributory negligence in the operation of the car in attempting to cut across in front of the government car with the purpose of attempting to avoid the collision. Many accidents with disastrous results have occurred in this manner. It seems reasonable to assume that this should be the last extremity, to cut over into the opposite lane of an oncoming car with the idea of avoiding a collision, especially where it is impossible to determine the speed of an approaching car. The adoption of such a method would largely depend upon the individual circumstances in each case involving the immediate conditions surrounding the condition of the highway and the adjacent territory. According to the testimony of Mrs. Kunkel on cross-examination when she saw the sergeant's car was straddling the center line and other evidence offered in the case tends to confirm the belief that the sergeant's car had been gradually for some distance angling back to his side of the road. According to the testimony of Mrs. Leonard she had driven off to her right side of the road so that her wheels were upon the shoulder. Under these circumstances she could easily have stopped her car or have proceeded partially on the shoulder of the road and have been practically sure of avoiding the collision. The condition of the so-called "barrow pit" was such that she could have safely driven off the road entirely on her own side without apparent danger. Instead of this she elected to take the extremely hazardous chance of turning to her left and into the lane of a car coming in the opposite direction.

Counsel have pointed to cases in which such an act in the case of emergency was permissible, as in O'Malley v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582. The facts in that case showed that road was only 24 feet wide and the pavement only 19½ feet wide, with a wire fence and with a gulch 18 feet deep at his right. In Marvel v. Pursel, 65 Wyo. 395, 202 P.2d 656, the place where the accident occurred was on a highway 21½ feet wide. The difference in the physical conditions involved in those cases and those in the case at bar woud seem to distinguish them sufficiently to be a deciding factor in the case. In those cases there was a very narrow highway with dangerous conditions on each side. In the case at bar there was a broad highway of considerably over 40 feet in width with an adjoining usable condition of terrain, either of which if observed by plaintiff would have meant a reasonable certainty that no collision would have occurred.

Plaintiffs' counsel contend that in an emergency the driver is not charged with the highest form of judgment in omitting to act in the most judicious manner. The principle is expressed in 5 Am.Jur., at Section 171, page 600, in the following language:

"An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though

he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency. Nor, if he so acts under these circumstances, is he guilty of contributory negligence, at least, negligence or contributory negligence on his part cannot be found as a matter of law. Where the situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf. Moreover, the emergency rule does not apply if the driver is not in a position of sudden peril, even though he mistakenly thinks he is because he does not use his sense of sight to see what is plainly observable.

"The sudden emergency doctrine is not an exception to the general rule; the question is whether the defendant acted as an ordinarily prudent and careful person would have done under the same circumstances, and the emergency is one of the circumstances contemplated by the rule. If the defendant's course was one that an ordinarily prudent and careful driver put in such a position might have taken, he is relieved from liability; otherwise he is not. The driver's own judgment or impulse is not in any situation, emergent or otherwise, the law's criterion. The driver is exonerated if the course which he takes in an emergency is one which might fairly be chosen by an intelligent and prudent person." * * *

This rule is substantially sustained in Wells v. McKenzie, 50 Wyo. 412, 62 P.2d 305.

Applying the rule to the facts in the case at bar a very unsatisfactory situation is presented for the driver of the plaintiff's car in that she cut across to the opposite lane in front of an oncoming car when the highway in front of her in her own lane was more than 20 feet wide and capable of carrying two or three cars abreast. Under all these circumstances this Court cannot feel that the plaintiff has brought herself within the emergency rule and therefore was herself guilty of negligence contributing to that of the driver of the government car which precludes recovery and it will be so found.

In the event a higher court should not agree with the conclusions of this Court, in the foregoing conclusions on a remand of the case the only matters left for determination would be the determination of damages and the collateral question as to what, if any, damage the administrator of the daughter would be entitled to recover growing out of the negligence of the driver of the government car. This question itself is a controversial one in which the courts appear to be in disagreement.

For the foregoing reasons this Court finds that the driver of the government car was negligent but that the negligence of the plaintiff contributed to the negligence of the driver of the government car constituting the proximate cause of the collision.

It will devolve upon counsel for defendant to prepare and present findings of fact and conclusions of law, with an appropriate judgment, in harmony with this decision, in collaboration with plaintiffs' counsel if convenient and agreeable, reserving to plaintiffs all desired exceptions, such findings, conclusions and judgment to be submitted on or before May 24, 1955, and an order will be entered accordingly.